THE HANOVER INSURANCE COMPANY and Export Insurance Company, Petitioners,

*v.*

RAY W. HANEY, Respondent.

J. FRED EASTERLY, Petitioner,

*v.*

THE HANOVER INSURANCE COMPANY and Export Insurance Company, Respondents.

425 S.W.2d 590.

(*Knoxville,* September Term, 1967.)

Opinion filed March 8, 1968.

John P. Davis, Jr., Knoxville, for Hanover Insurance Company and Export Insurance Company.

J. Kenneth Porter, Newport, for J. Fred Easterly.

Alfred W. Taylor, Johnson City, for Ray W. Haney.

Mr. Justice Creson delivered the opinion of the Court.

These separate suits were brought upon policies of insurance issued to respondent Ray W. Haney by The Hanover Insurance Company and Export Insurance Company. These policies provide protection against loss by fire of tobacco held in the Independent Tobacco Warehouses, which are owned and operated by Haney. These

warehouses were damaged extensively by fire on January 17, 1966, and a large quantity of tobacco was burned. Part of the destroyed tobacco was so-called "leaf account" tobacco, owned by Mr. Haney. The remainder of the tobacco in question was owned by a tobacco speculator, J. Fred Easterly, who held tobacco located in the warehouses for reworking and shipment to other markets.

The trial judge, sitting without the intervention of a jury, found in favor of both Haney and Easterly; and awarded judgments for the value of the tobacco owned by each party. The Court of Appeals, Eastern Section, affirmed the judgment as to Haney, and reversed as to Easterly. Easterly and the insurance companies filed petitions for certiorari in this Court. In view of the continuing practice in the tobacco area of this method of underwriting, and its obvious importance to the Tennessee tobacco industry, we granted the writs of certiorari in order to hear the entire case at oral argument.

This case involves a question of coverage under standard fire insurance policies, supplemented by "tobacco in sales warehouse (auction form)" endorsements for the 1965-66 tobacco sales season. Apparently this form and method of insurance underwriting has been prevalent in the industry for many years. The policies here in question were issued by Hanover and Export to the Independent Tobacco Warehouses in Greeneville, Tennessee, owned and operated by Haney. Under the terms of the standard fire policies, the insurance was written for a period not to exceed five (5) months from November 18, 1965 in the case of the Export Insurance Company, and for a period not to exceed one (1) year from

November 19, 1965, in the case of The Hanover Insurance Company.

The "tobacco in sales warehouse (auction form)" endorsement on both policies contains the following language:

"1. This policy covers upon leaf, loose, scrap and stem tobacco, the property of others while in the control or custody of the Insured for auction, *also including* warehousemen's 'leaf account' tobacco for resale only, all while contained in the tobacco sales warehouse, situated at No. R 308-12 on the South side of Bohannon Street, in Greeneville, Tennessee."

✻    ✻    ✻    ✻    ✻    ✻

"13. Suspension of Liability: In consideration of the rate and this policy covering sessional tobacco in sales warehouses, this policy shall cover only sale and resale tobacco as above, and (1) there shall be no liability on the part of this Company for tobacco sold at any auction (except warehousemen's 'leaf account' tobacco held for resale) on and after 6:00 o'clock P.M. of the day following such auction sale and (2) this policy shall cease and be null and void at 6:00 o'clock P.M. of the day following *the last regular auction sale of the present season.*" (Emphasis added.)

The principal issue in this case revolves around the interpretation to be placed on, and the effect to be given, the provisions above.

Greene County is part of the Burley Belt in the federally regulated tobacco market. A uniform opening date for the sale of tobacco in this Belt is fixed at a meeting of the representatives of the industry held at Lexington,

Kentucky, substantially before the so-called regular auction sales season. The closing date of the several markets varies and is determined by agreement between the local Tobacco Board of Trade (warehousemen) and representatives of the tobacco companies, several weeks prior to the actual closing date, and after a survey of the market is made to determine how much unsold tobacco is in the area. For the 1965-66 season, the official closing date for Greeneville was set for January 13, 1966; and the market was, in fact, officially ended on that date. The insurance companies urge that their policies terminated at 6:00 o'clock P.M. on January 14, 1966. This was three days prior to the loss by fire of $8,175.00 worth of tobacco sustained by Haney, for which he is seeking recovery.

The evidence in the record shows that when the market closed in Greeneville on January 13, all of the auctioneers and all of the bidders from the major companies left the area. As was usual, comparatively small amounts of tobacco did continue to come into the Greeneville warehouses; and the warehousemen continued to hold previously accumulated "leaf account tobacco." This record indicates that this tobacco was customarily purchased by the Austin Company of Greeneville and, in some few cases, by other independent dealers in the area. These purchases were not made on oral bids to an auctioneer, but consisted of an examination of the tobacco followed by a written bid, which was accepted or rejected by the owner.

The determinative question in this case, according to the Court of Appeals, is whether or not the sales, after the closing of the official season, were "regular auction sales." That is, whether the coverage of the endorsement extended beyond the closing of the "regular" season to

the time at which all of the tobacco in the warehouses was sold; of course, within the maximum time coverage of the policies. It was agreed by both parties that this post-season activity normally extended until late February or early March.

If the phrase "last regular auction sale of the present season," as used in the suspension clause of the policies of insurance, refers to the last auction sale of the official tobacco market in Greeneville, the insurance policies became null and void on January 14, 1966, and the destruction of tobacco in the Haney warehouses was not covered. If on the other hand, that phrase is to be regarded as including those sales, if any, which occurred during the usual time the warehouses were open to receive and sell the current year's tobacco crop, the loss was covered. Neither that of the Court of Appeals nor our own research revealed a definition of the phrase used in either of the policies of insurance. Further, no decisions have been found wherein a court has construed that phrase.

▮ The Court of Appeals relied upon the rule of interpretation that the language of the contract, where ambiguous, will be construed most strongly against the party who drew it. Based on this premise, that Court's reasoning is both cogent and analytically sound wherein it states:

"In the present case, as noted above, the evidence shows without dispute that a number of warehouses on the Greeneville market remain open and receive and sell tobacco for several weeks after the official market closes. This practice is of long-standing, and was described as a custom-one that we may assume was known generally by those doing business with the

warehousemen, whether farmers, tobacco dealers, or insurance men selling coverage against loss by fire of tobacco in the warehouse awaiting sale by auction. With this background, Mr. Haney purchased insurance from a local agent to protect both his 'leaf account' tobacco and tobacco left with him by customers for sale by auction. The risk of loss of tobacco by fire— the risk against which Mr. Haney sought protection— would continue so long as the warehouse was open and tobacco was being received and held for sale. The policies issued by the defendants stated the term of the insurance so that it extended well beyond the time the warehouse would remain open and handle the current year's tobacco crop. From this we think it reasonable to conclude that the parties intended the coverage to remain in force so long as the Haney warehouse was open and conducting regular auction sales of the current crop of tobacco. If the defendant insurance companies had intended to limit coverage to the time the official tobacco market was open as they now insist, they had the opportunity to so state in clear, unequivocal terms as they were the authors of the contract. Having failed to do so, we think our conclusions as to the termination date of the insurance coverage is buttressed by 'the rule of interpretation that language used in a contract will be construed most strongly against the party who has used it. Williston on Contracts, Volume 2, pages 1203-1204, Section 621.' *Marron v. Scarbrough,* 44 Tenn.App. 414, 314 S.W.2d 165.''

■ Analysis of the phrase ''regular auction sale'' in the light of the industry practices and method of handling the subject of insurance coverage, inescapably leaves

dubiety as to whether or not the phrase does or does not encompass the sales of tobacco which occurred after the closing of the official tobacco market. 7 C.J.S. Auctions and Auctioneers sec. 1, pp. 1239-1240; 7 Am.Jur.2d 221 (Auctions and Auctioneers, sec. 1). The conclusion that there is ambiguity as between permissible meanings which must be resolved in favor of the insured is inexorable.

We are in full agreement with the view of the Court of Appeals that the tobacco owned by petitioner Easterly was not in the Haney warehouse under such conditions as to bring it within the coverage of the policies.

The judgments of the Court of Appeals, affirming the recovery of the respondent Haney, and denying recovery to the petitioner Easterly, are, in all respects, affirmed. The costs of this appeal are assessed two-thirds against petitioners The Hanover Insurance Company and Export Insurance Company, and one-third against petitioner Easterly.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and HUMPHREYS, JUSTICES, concur.