**Carl L. HARRELL, Plaintiff-Appellant,**

v.

**DEAN FOOD COMPANY, Defendant-Appellee.**

Court of Appeals of Tennessee, Western Section, At Jackson.

April 28, 1981.

Application for Permission to Appeal Denied by Supreme Court Aug. 3, 1981.

L. E. Van Eaton, Memphis, for plaintiff-appellant.

John C. Speer, Memphis, for defendant-appellee.

NEARN, Judge.

This is an appeal from a Chancery decree in a declaratory judgment matter. The case was heard on the pleadings, the stipulations and the discovery deposition of the plaintiff.

By virtue of two written agreements, plaintiff agreed to sell the products of defendant Dean Foods Company in a specific territory. A dispute arose between the parties regarding their respective rights under the agreements, and this suit resulted.

The proof shows that the two agreements were entered into simultaneously although one is dated December 2, 1963, and the other is dated December 5, 1963.

The agreement dated December 5, 1963, is styled "Sale and Option Agreement" and is in printed form. The parts which we find necessary to copy for a better understanding of the problem presented are:

"WITNESSETH:

"WHEREAS, Dean is engaged in the business of processing and selling milk, cream and other dairy products and is presently operating a certain wholesale milk route which serves grocery stores and other retail establishments in the Memphis metropolitan area, as is more fully described below; and

"WHEREAS, Distributor desires to buy the aforesaid milk route and to establish himself as an independent wholesale distributor of Dean's milk, cream and other dairy products in the area described below;

"NOW, THEREFORE, in consideration of the payment by Distributor to Dean of the sum of One Hundred Forty-nine and 50/100 Dollars ($149.50) receipt of which sum is hereby acknowledged, and of the mutual covenants herein contained, the parties do hereby agree as follows:

"1. Dean does bargain and sell and, by these presents, does grant, convey and assign unto the Distributor all of the following described assets, to-wit:

"(a) One (1) mechanically refrigerated truck described as follows:

"Make and Model _____

"Serial No. _____

"Year _____

"(b) All current accounts receivable due and owing to Dean from customers on the route described below, said accounts receivable being specified in attached Exhibit A.

"(c) A certain wholesale milk route, serving grocery stores and other retail establishments (total of 2,990 points per week on said route) located within the territory outlined on the map attached hereto as Exhibit B, together with the list of customers, total points and good will appurtenant to said route; provided such good will shall not include any interest in or right to use any trade name, trademark or brand name owned or used by Dean, whether or not the same is registered.

"2. Dean represents that the above described assets are free and clear of all liens and encumbrances and will warrant and defend the sale of the same made unto Distributor against all persons whomsoever. Dean further guarantees payment of all accounts receivable assigned to Distributor hereunder.

"3. In the event Distributor at any time shall decide to sell his entire wholesale milk route business, Dean agrees to purchase for itself or any nominee designated by Dean said business at a price to be determined in accordance with paragraph 4 hereof. Notice of such decision shall be given by registered letter addressed to Dean at 2040 Madison, Memphis, Tennessee.

"In the event a customer of the Distributor should become affiliated with a voluntary or cooperative buying group served by Dean, then Dean agrees to pay the distributor an amount computed under Section 4(b) hereof."

4. (This section deals with the determination of the sale price and valuation of assets in the event of a sale to Dean provided for in Section 3.)

"5. This Agreement shall be binding upon and inure to the benefit of the respective parties hereto, their heirs, successors, representatives and assigns."

Since Harrell did not purchase a truck from Dean (he had his own), the portion of Section 1(a) describing a truck was not filled in.

The agreement dated December 2, 1963, is styled "Distributor Agreement", is in printed form and in pertinent part is as follows:

"WITNESSETH:

"WHEREAS, Dean is engaged in the City of Memphis, Tennessee and surrounding territory in the business of processing and selling milk, cream and other dairy products; and

"WHEREAS, Distributor has purchased from Dean a certain wholesale milk route composed of grocery stores and other retail establishments located within the territory hereinafter described, and desires to purchase milk, cream and other dairy products from Dean for the purpose of reselling the same for his own account to his customers on said route;

"NOW, THEREFORE, in consideration of the premises and the mutual promises hereinafter contained, the parties agree as follows:

"1. During the term of this Agreement, Dean agrees to sell to Distributor, and Distributor agrees to purchase from Dean, all milk, cream and other dairy products customarily processed and packaged by Dean as Distributor shall require for resale to grocery stores and other retail establishments located within the area shown on a certain map attached hereto, marked Exhibit A and made part hereof.

"2. Dean agrees that it will not, directly or indirectly, solicit or serve the above mentioned grocery stores or other retail establishments located within said territory so long as this Agreement shall be in force, and Distributor shall not be in default under any of the terms hereof; provided, however, that nothing herein contained shall be deemed to prohibit Dean

at any time from selling and delivering milk, cream and other dairy products within said territory to corporate grocery chain stores or to any store or other establishment now or hereafter affiliated with any group, voluntary or cooperative buying association. Dean further reserves the right to solicit any grocery store or other retail establishment in said territory, including Distributor's accounts therein, in order to induce the same to become affiliated with a group, voluntary or cooperative buying association."

\*  \*  \*  \*  \*  \*

"6. Distributor's relationship to Dean is and shall be that of a purchaser of Dean products, and Dean shall have no right to control, and shall not control, the prices and other terms upon which Distributor shall sell to his customers. Distributor shall have complete management and control of his business and the nature, extent and method of conducting same, subject only to the terms of this Agreement. Distributor shall provide all facilities and equipment as may be necessary to conduct his business and shall be solely responsible for the use thereof. Neither Distributor nor any person who may at any time be employed or associated with him shall represent himself to be an employee, agent or representative of Dean. Distributor shall not use sales slips, statements or other forms on which the name of Dean or any trade name or trade mark owned or used by Dean, appears in such manner as may lead others to believe that Distributor is an employee, agent or representative of Dean. Distributor shall advertise and represent that he sells and distributes Dean products only in such manner as may be approved by Dean. Distributor agrees that any vehicle operated by him will be conspicuously lettered to show that it is owned and operated by Distributor. Distributor shall not use any trade name or trade mark owned or used by Dean in connection with his business, or on any vehicle used by him, without first obtaining the written consent of Dean as to the manner of such use; provided that nothing herein contained shall relieve Distributor from displaying, in such manner as Dean may direct, any trade name or trade mark owned or used by Dean to identify it as the processor or manufacturer of said dairy products wherever the same is required by law or is in accord with local custom. Dean agrees to paint, as needed, any vehicle displaying any such trade name or trade mark used by Distributor."

\*  \*  \*  \*  \*  \*

"10. Either party hereto may elect to terminate this Agreement at any time by giving the other party thirty (30) days' written notice thereof. In the event Distributor at any time is in default under any term of this Agreement, or any other then subsisting agreement between the parties hereto, Dean may, upon five (5) days' written notice, terminate this Agreement, provided said default is not cured within said five (5) day period. Upon termination hereof, all trade names or trade marks owned or used by Dean shall be promptly removed from any premises, property and equipment of Distributor.

"11. Any notice required to be given under the terms of this Agreement shall be sent by registered mail, postage fully prepaid, addressed to Dean at 2040 Madison, Memphis, Tennessee, and to Distributor at 3815 Vanuys Street, Memphis, Tennessee, in which case said notice shall be deemed effectively given when mailed.

"12. This Agreement shall be binding upon and inure to the benefit of the respective parties hereto, their heirs, successors, representatives and assigns, but shall not be subject to assignment by distributor without the prior written consent of Dean."

The parties operated under the foregoing agreements until July 10, 1978, when Dean notified Harrell by registered mail that pursuant to "the Sale and Option Agreement—Dean Foods elects to purchase your distributor route—" at the terms set forth in paragraph 4 and to purchase the accounts receivable on a dollar for dollar basis. Fur-

ther, that Dean would negotiate with Harrell for a fair market price for his delivery truck. The letter expressed a desire to complete the transaction within thirty days and "to arrange a meeting convenient to both parties to finalize this matter within the next few days."

On July 24, 1978, Dean again wrote Harrell by registered mail and informed him that since it had received no response from their July 10 letter, Dean had decided to "arrange another method of delivery to the Montesi store located at 1620 Madison Avenue which you are presently serving for Dean Foods Company", and "(E)ffective Monday, July 31, 1978, we will no longer need your services for this account."

The Montesi store was the largest and most lucrative account in plaintiff's distributorship area.

Harrell filed his complaint seeking injunctive relief and a declaration of rights. It was the theory of the complaint that the agreements furnished Dean no option to repurchase the route that he had purchased from Dean. Further, that Dean could not deprive him of the property right he had purchased by refusal to sell plaintiff its products and, thereby, forcing plaintiff to sell his route to defendant against his will.

The defendant's answer averred that it had terminated the "Distributor Agreement" because plaintiff violated paragraph 5 thereof, in that plaintiff had not used his best efforts in the sale of defendant's products. The defendant admitted that "it offered, pursuant to the terms of the Sale and Option Agreement, to purchase the route." In short, it was the defendant's theory that both of the above agreements constituted but one agreement and that the breach of any part of the "one" agreement triggered defendant's right to terminate the agreement in toto.

The Chancellor decreed as follows:

"The Court specifically finds that pursuant to the Distributor Agreement, Paragraph 1, the Plaintiff, Harrell, was granted an area within which he was to operate as a distributor of Defendant's (Dean's) products.

"The Court finds that Paragraph 2 of the Distributor Agreement, as agreed to by both parties, reserved to Dean the right to make exceptions to the exclusive distributorship referred to in Paragraph 1 of the Agreement with respect to certain customers and accounts located within Harrell's area. Dean, after exercising their right to create the exceptions, cannot transfer those accounts to another distributor, but must service those accounts itself.

"The Court finds that Paragraph 10 of the Distributor Agreement permits Dean to terminate a distributor and the Distributor Agreement upon providing the proper notice referred to in that paragraph. Until such an election by Dean, the Court finds Harrell has a property right to the distributorship route. Harrell, as a distributor, has a property right only for so long as Dean does not exercise its right to terminate under Paragraph 10 of the Distributor Agreement.

"The Court finds that until such an election by Dean is made to terminate Harrell as a distributor, Harrell does have a property right in his route and may sell it on the open market or to Dean as set forth in Paragraph 3 of the Sale and Option Agreement. The Court finds that the terms of Paragraph 3 of the Sale and Option Agreement provide that Harrell has a right at his election to sell out and require Dean to buy him out, if made prior to an exercise by Dean of its right to terminate. Dean has no right to demand and require that Harrell sell to Dean his route, the right to sell being exclusively Harrell's.

"In this case, the Court finds that Dean has not specifically exercised its right to terminate Harrell as a distributor under Paragraph 10 of the Distributor Agreement.

"Costs are to be assessed equally against each party.

"IT IS SO ORDERED AND DECREED."

Harrell has appealed from that decree and insists that the Chancellor erred in his

holding that the property right of plaintiff in the distributorship route obtained in the Sale and Option Agreement existed "only for so long as Dean does not exercise its right to terminate under Paragraph 10 of the Distributor Agreement."

In his brief, counsel for Harrell succinctly argues his appeal as follows:

"There is no dispute with the fact that Dean must have freedom to conduct business in its own manner. Certainly it is within the rights of Dean to stop providing milk products for sale to Harrell or any other distributor. There is no law that prevents a seller from selecting those persons he does or does not want to deal with commercially. However, Dean's freedom in transacting business is limited in this case because of the sale of the property right in the distributorship route to Harrell. Dean may refuse to sell products to Harrell; it cannot ignore Harrell's property right and allow another distributor to sell within that area. Harrell purchased the property right from Dean, for good and valuable consideration. If Dean could at anytime ignore this purchase and arbitrarily terminate the property right without anything more than 30 days notice, then our laws, cases and basic equitable beliefs are worthless."

We believe that argument to be perfectly sound.

The main argument presented by counsel for appellee is that the two documents together constitute one agreement; that both documents are to be construed together and, therefore, paragraph 10 of the document styled Distributor Agreement gives to either party the right to terminate the entire agreement upon thirty days notice. We do not believe this argument is sound.

■ The proof is that both documents were drawn by Dean. If Dean desired that both be considered one contract, it only had to say so or draw one instrument. Authorities are legion for the proposition that where an ambiguity exists, it will be resolved against the drafter. See *Hanover Ins. Co. v. Haney,* (1968) 221 Tenn. 148, 425 S.W.2d 590; *Fuller v. Orkin Exterminating Co.,* (1975 Tenn.App.W.S.) 545 S.W.2d 103.

These documents plainly state on their face that they are two separate agreements. The Sale and Option Agreement contains a sale price, words of conveyance, warranties and gives the vendor a right of first refusal in the event the purchaser desires to sell to another party. Further, those rights inure to the benefit of the parties, "their heirs, successors, representatives and assigns." That contract is in no way executory. The conclusion that the parties considered it an absolute sale is further buttressed by the fact that unlike the last paragraph of the "Distributor Agreement" the "Sale and Option Agreement" contains no prohibition against an "assignment".

■ The "Distributor Agreement" is nothing more than an agreement between a manufacturer and a distributor. It is a continuing agreement with both parties agreeing to do certain things during the relationship. It does give the right to Dean to terminate *that* agreement on thirty days written notice or on five days notice if the distributor is in default in the terms of *that* agreement or any other agreement subsisting. Paragraph 10 thereof affords no right in Dean to declare the "Sale and Option Agreement" terminated or void. Parenthetically, the term "any other agreement" in paragraph 10 could not include the "Sale and Option Agreement" because Harrell could not possibly have been in default of the "Sale and Option Agreement" for he had no continuing obligation thereunder. He had paid the money thereunder required and only he, not Dean, had the option to require Dean to repurchase at an agreed upon price.

■ Counsel for appellee further argues that since appellant admits the right of Dean to terminate the "Distributor Agreement", once that "relationship ceases to exist Harrell has no *business* to sell to Dean" (emphasis theirs). That statement is a *non sequitur*. After the distributorship is terminated Harrell still has accounts receivable and Harrell still has the exclusive right to sell Dean's goods in a prescribed area.

True, his right has a lesser value without an agreement by Dean to sell goods to the holder of the exclusive right, but it still has a value. It would seem to us that it would have considerable value to Dean unless it desires to cease selling goods to independent stores in the area. In fact, we believe that value is what this suit is all about. If Dean desires that exclusive right which it sold to Harrell, it will have to purchase it when Harrell decides to sell it and not confiscate it at will.

The result is that the section of the Chancellor's decree holding that Harrell has a property right in the route purchased only so long as Dean does not exercise its right to terminate under paragraph 10 of the "Distributor Agreement", is reversed. We hold that Dean may not unilaterally terminate that right purchased by Harrell. In all else, the Chancellor is affirmed.

The cause is remanded to the Chancery Court of Shelby County for the purpose of rendering appropriate injunctive relief to Harrell, if necessary, to protect his property right obtained in the "Sale and Option Agreement" plus any further proceedings.

Costs of appeal are adjudged against appellee.

Done at Jackson in the two hundred and fifth year of our Independence and in the one hundred and eighty-sixth year of our Statehood.

MATHERINE, J., and INMAN, Special Judge, concur.