IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 18, 2002 Session

## MARTIN DOOR & WINDOW COMPANY, INC. v. THOMAS DONEGAN d/b/a THE CONSTRUCTION TEAM, ET AL.

**Appeal from the Chancery Court for Wilson County**
**No. 97321     Charles K. Smith, Chancellor**

---

**No. M2001-01230-COA-R3-CV - Filed June 13, 2002**

---

WILLIAM C. KOCH, JR., J., concurring.

I concur with the results reached by the court in this case only because Martin Door & Window Company has failed to prove that its separate contract with Wallace Cornett, Jr. included the doors and windows installed in Mr. Cornett's new house, as well as the other materials Mr. Cornett purchased. I find it necessary to write separately because the court has failed to address the correctness of the trial court's legal conclusion that Tenn. Code Ann. § 66-11-146 (1993) "overrides" Tenn. Code Ann. § 66-11-102 (1993). This interpretation of Tenn. Code Ann. § 66-11-146 is much too broad and, if left unchallenged, will cause widespread mischief in the residential construction and remodeling business.

### I.

Tenn. Code Ann. § 66-11-146 was the culmination of a ten-year effort by Memphis-area legislators to respond to constituent complaints about the practices of unscrupulous home repair contractors. These contractors performed the work (generally substandard and overpriced), collected their money, and then disappeared without paying their material suppliers. When the material suppliers were not paid, they invoked their rights under Tenn. Code Ann. § 66-11-102 to place a lien on the homeowner's property. These liens understandably upset the homeowners because they had already paid for the work and were required to pay again to have the lien removed.

The General Assembly enacted Tenn. Code Ann. § 66-11-146 to protect property owners from materialman's liens if they could demonstrate that they had paid completely for the repairs to their home. The language of Tenn. Code Ann. § 66-11-146 is broad enough to cover property owners building a new home. The operative language in Tenn. Code Ann. § 66-11-146(a)(2) limits the application of the statute to "individual contracts to improve residential real property." This language, apparently overlooked by the trial court, is extremely important because it reflects the

General Assembly's understanding that property owners can and do enter into other contracts that can and should fall under Tenn. Code Ann. § 66-11-102.

There are essentially four ways that materials may be purchased during a residential construction or improvement project. First, the general contractor can select and purchase all the materials. Second, the contractor can include an allowance in its contract that permits the owner to select the materials which are then paid for by the contractor. Third, the owner can purchase some or all of the materials and then supply the materials to the contractor.[1] Fourth, the owner can select and pay for the materials in the contractor's name to take advantage of the contractor's trade discount with the supplier or manufacturer.

Tenn. Code Ann. § 66-11-146 "overrides," to use the trial court's term, Tenn. Code Ann. § 66-11-102 only with regard to scenarios one and two because in both of those scenarios, the only contract for the sale of goods is between the supplier and the contractor. The owner's contract is one for the improvement of residential property. The statute, by its own terms, cannot apply to scenarios three and four because in both of these scenarios, the owner has not just entered into a contract to improve residential property. In scenarios three and four, the owner has also entered into a contract with the supplier to purchase goods. It should be obvious that contracts to purchase goods are not "individual contracts to improve residential property" for the purpose of Tenn. Code Ann. § 66-11-146. Thus, Tenn. Code Ann. § 66-11-146 should not be stretched to cover contracts for owner-furnished items. When a supplier who has contracted directly with the owner has not been paid for the items covered by the contract, Tenn. Code Ann. § 66-11-102 should permit the supplier to place a lien on the owner's property.

## II.

There is a remaining question. Can a material supplier avoid the effect of Tenn. Code Ann. § 66-11-146 by contracting for materials with both the owner and the contractor? While this practice may not be common, I find nothing in the language of Tenn. Code Ann. § 66-11-146 nor in its legislative history that would prevent a material supplier from protecting itself by contracting with both the owner and the contractor using either joint or separate contracts. In this scenario, the material supplier has entered into two contracts (or contracted with two parties) to supply goods that will be used for the project. It has not entered into a contract "to improve residential property." Because the supplier has not entered into a contract to improve residential property, there is no basis to deny the supplier its right to assert the lien rights available in Tenn. Code Ann. § 66-11-102. However, the lien can cover only the cost of the goods the owner contracted to purchase. It cannot cover the cost of goods furnished to the contractor that are not within the scope of the contract with the owner.

## III.

---

[1] These sorts of materials are commonly referred to as "owner-furnished" items.

Mr. Cornett exposed himself to liability by inserting himself into the construction of his new house without fully appreciating the potential legal consequences of his actions. The courts should be hesitant to extricate him from this self-created debacle simply because his actions turned out to be unwise or burdensome. *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 553 (Tenn. Ct. App. 1991); *Ballard v. North Am. Life & Cas. Co.*, 667 S.W.2d 79, 82 (Tenn. Ct. App. 1983); *Carrington v. W. A. Soefker & Son., Inc.*, 624 S.W.2d 894, 897 (Tenn. Ct. App. 1981). However, applying neutral principles of law, Mr. Cornett should be entitled to relief if Martin Door & Window Company has failed to prove all the elements of its cause of action.

Even though this appeal focuses on Martin Door & Window Company's claimed lien remedy, the gravamen of the claim is breach of contract. Thus, in order for Martin Door & Window Company to prevail, it must prove that it had a contract with Mr. Cornett to supply the doors and windows for his new house, that it supplied the contracted-for doors and windows, and that it had not been paid for all or part of the doors and windows it provided.

The trial court, apparently unimpressed with Martin Door & Window Company's "application for credit," concluded that "Martin has failed to prove there was a contract between Martin and Cornett" and that "Cornett has no liability to Martin under contract." This conclusion is incorrect as a matter of fact and law. Mr. Cornett clearly had a contract with Martin Door & Window Company. The operative question is whether this contract covered the windows and doors Martin Door & Window Company supplied for Mr. Cornett's house. Based on my review of the record in this case, I would find that Martin Door & Window Company has not proved that the contract it had with Mr. Cornett covered the doors and windows.

The document signed by Mr. Cornett on February 14, 1996, does not specifically identify the goods Mr. Cornett agreed to purchase. Thus, we must look elsewhere for evidence regarding the subject matter of the party's contract. Martin Door & Window Company, relying on the principle of integration,[2] claims that Mr. Cornett confirmed the subject matter of the contract when he informed the company that "we have accepted your bid." Because its bid covered the windows and doors for Mr. Cornett's house, Martin Door & Window Company deduces that Mr. Cornett's statement is enough to obligate him to pay for the windows and doors. I do not agree. It is equally plausible that Mr. Cornett was acting as his contractor's agent when he accepted Martin Door & Window Company's bid. In that circumstance, he would never have been personally liable to pay for the windows and doors.

Ambiguous contractual provisions will be construed against the party responsible for drafting them. *Hanover Ins. Co. v. Haney*, 221 Tenn. 148, 153-54, 425 S.W.2d 590, 592-93 (1968); *Marshall v. Jackson & Jones Oils, Inc.*, 20 S.W.3d 678, 682 (Tenn. Ct. App. 1999). Thus, the document Mr.

---

[2]The principle of integration embodies the rule that all prior statements or negotiations are merged into a written contract intended by the parties to be a complete expression of their agreement. *Magnolia Group v. Metropolitan Dev. & Hous. Agency*, 783 S.W.2d 563, 566 (Tenn. Ct. App. 1989); *Bringhurst v. Tual*, 598 S.W.2d 620, 622 (Tenn. Ct. App. 1980).

Cornett signed on February 14, 1996 should be construed against Martin Door & Window Company to the extent it is ambiguous. I find that the document is ambiguous with regard to the subject matter of the contract. It could cover the windows and doors as well as the other items purchased and paid for by Mr. Cornett, or it could cover just the items invoiced to Mr. Cornett personally. Construing the agreement against Martin Door & Window Company, I would find that Martin Door & Window Company has failed to prove that the February 14, 1996 document signed by Mr. Cornett covered anything other than the goods personally invoiced to Mr. Cornett.

In light of the undisputed evidence that Mr. Cornett paid for all the items invoiced directly to him, Martin Door & Window Company has failed to prove that Mr. Cornett has breached his contract. Therefore, it is not entitled to assert lien rights under Tenn. Code Ann. § 66-11-102. To the extent that Martin Door & Window Company has not been paid for the windows and doors furnished to Mr. Cornett's general contractor, it is barred from asserting lien rights by Tenn. Code Ann. § 66-11-146 because Mr. Cornett had a contract with the general contractor to "improve residential property."

_____
WILLIAM C. KOCH, JR., JUDGE