# COUNTY OF WALDO.

## † TITUS _versus_ MORSE & al.

Where an administrator sells at public auction his intestate's right to two contiguous _lots_ of land, and a third person, at his request, points out the line _between_ them, to which _boundary_ no objection is made by the purchasers ; one of them is not estopped thereby from claiming to the _true line_ of his _lot_, beyond the one thus pointed out, unless at the time of the sale he _knew_ where the true line between the lots was, and the other purchaser was induced and did purchase in consequence of his _silence_ or some _acts_ by him done.

ON EXCEPTIONS from _Nisi Prius_, RICE, J., presiding.

TRESPASS _quare clausum._

Both parties claimed title to the _locus in quo,_ and the question in dispute was as to the division line between the owners of contiguous lots in the town of Appleton.

The strip in dispute was about sixteen rods wide at one end and eleven rods at the other.

The lots on either side were formerly known as the John Newbit on the north, and Christopher Newbit on the south.

Plaintiff claimed title by mesne conveyances from one Jacob Newbit, but he also purchased a claim to the same, sold by the administrator of Walter Blake.

The defendant claimed title through Walter Blake.

Blake's administrator sold all his title to both lots, under a license from the Judge of Probate ; and at this sale, the evidence tended to show, that the parties to this suit were present and purchased the rights of said Blake, the plaintiff to the north lot of John Newbit and defendants to south lot of Christopher Newbit.

The evidence also tended to show that, the line between those lots being inquired for before the sale, the administrator, not knowing where it was, called on one Charles F. Blake to point it out, which he did, and that the line then

pointed out, would exclude the *locus in quo* from the plain-tiff's lot.

There was much evidence adduced in the case, which called for appropriate instructions, that is unnecessary to re-hearse.

As to the effect of the doings at the sale, the presiding Judge instructed the jury, that if, at the time of the sale by Blake's administrator, Charles F., at his request, pointed out the line between the John and Christopher Newbit lots; and if both parties were present and heard and understood his description, and assented to its correctness, or express-ed no dissent therefrom; and the different fields were there-upon sold in conformity with the boundaries thus pointed out, the plaintiff would be estopped from claiming title to the land thus purchased by defendants, south of the line thus pointed out by Blake.

A verdict was returned for defendants.

The plaintiff excepted to this and other instructions, and also filed a motion to set the verdict aside as against the ev-idence.

*Ruggles & Gould,* supported the exceptions. On that part of the case relating to estoppels, especially in refer-ence to title to real estate, they cited *Gore* v. *Richardson,* 4 Greenl. 327; *Hamlin* v. *Hamlin,* 19 Maine, 141; *Whit-ney* v. *Holmes,* 15 Mass. 153; *B. & W. R. R. Co.* v. *Spar-hawk,* 5 Met. 469, as being in conflict with the instruction given.

In *Parker* v. *Barker,* 2 Met. 423, it was doubted whether in any case there could be an estoppel *in pais* as to real estate. The case of *Brewer* v. *B. & W. R. R. Co.,* 5 Met. 478, was also opposed to this instruction.

They contended there was no case where, in a court of law, a party had been held to be estopped by any admission or declaration, unless where there had been fraud, design-edly secreting title and intentionally misleading, and where one is thereby misled and deceived and sustains injury

thereby, confiding in such declarations. Without such fraud, they maintained there was no estoppel *in pais*.

The jury were not required to find either fraud or knowledge of the former occupation.

Here was no ground for *estoppel*.

*Lowell & Foster, contra.*

To establish an estoppel *in pais* it should appear, (1,) that the party has made admissions in express language, or legitimately implied from his conduct or silence inconsistent with the claim or title which he now proposes to set up. (2,) That the other party has been influenced thereby and acted thereon, and (3,) that such other party will be injured by allowing the same to be disproved. These elements combining in any given case, the estoppel is complete. It is then immaterial whether the admission expressed or inferred, be true or false, or whether the party making it was to gain or lose, or neither, by the transaction, it being the controlling fact that it has been acted upon by another, and could not now be repudiated without injury to such party, that renders it conclusive. When the facts fall short of this definition of an estoppel *in pais*, they fail to be conclusive, and are then to be weighed as evidence with all the evidence in the cause with more or less effect, as they shall be found to conform to the truth and justice of the case. 1 Greenl. Ev. § 207, and notes, also § § 208, 212, and notes; *Dewey* v. *Field*, 4 Met. 381; Story on Bills, § 262; *Foster* v. *Newland*, 21 Wend. 94; *Wakefield* v. *Ross*, 5 Mason, 16; *Thompson* v. *Sanborn*, 11 N. H. 201; *Carpenter* v. *Stillwell*, 12 Barb. 128; *Hatch* v. *Kimball*, 16 Maine, 146; 2 Smith's L. C., title Estoppel.

The application of these principles to the facts of this case fully justifies the instructions.

The counsel for the defence also examined particularly the cases cited by plaintiff, and contended that they were all to be distinguished from the case at bar, and so not analogous.

The counsel for the defence maintained, that the doctrine

clearly deducible from all the most respectable authorities, is, that the conduct of the parties when acted upon, and when it cannot be repudiated without injustice to the other party, is conclusive by way of mutual estoppel, excepting only where the party, seeking to relieve himself therefrom, shall allege and make it clearly appear, (1,) that such line is in fact wrong; (2,) that it was agreed to and recognized under a fatal mistake of material facts as to the essential identity, locality and extent of the subject matter to which it is applied; and (3,) that irreparable injustice would follow to him by upholding the estoppel. In the absence of such exceptions, the estoppel is complete and inflexible. *Hatch* v. *Kimball*, 16 Maine, 146; *Colby* v. *Norton*, 19 Maine, 413; *Gore* v. *Richardson*, 4 Greenl. 332; *Dewey* v. *Field*, 4 Met. 381; *Cincinnati* v. *White*, 6 Peters. 431; *Larned* v. *Larned*, 11 Met. 421; *Carpenter* v. *Stillwell*, 12 Barb. 128; *Morris* v. *Moore*, 11 Kemp. 433.

RICE, J. — This case is presented on exceptions, and on a motion for a new trial, on the ground, that the verdict was against the evidence, and the weight of the evidence. Both the exceptions and motion have been elaborately argued in writing. There was a large amount of testimony adduced at the trial, all of which has been reported. The report is in the main, a transcript of the minutes of testimony taken by the presiding Judge, made by the counsel for the defendant.

The action is trespass *quare clausum*. The parties are proprietors of contiguous lots, formerly know as the John Newbit and Christopher Newbit lots. The plaintiff claimed title by sundry mesne conveyances from John Newbit. Walter Blake, deceased, claimed title to both lots. His administrator, Blunt, by order of the Judge of Probate, sold at public auction, Blake's title to both lots. There was evidence tending to prove, that at the sale, Charles Blake, a son of the intestate, in the presence of both parties, pointed out the dividing line between the two lots, before

they were sold, and that no objection was made to the line thus indicated. That line would exclude the *locus in quo* from the lot of the plaintiff. There was much testimony touching the occupation, by the owners of the different lots, of the *locus in quo*.

As to the effect of pointing out the dividing line between the lots by Blake, the presiding Judge instructed the jury, " that if at the time of the sale by Blunt, Blake's adminis- trator, Charles Blake, at the request of said administra- tor, pointed out the line between the John and Christopher Newbit lots, and if both parties were present and heard and understood the description, and assented to its correct- ness, or expressed no dissent therefrom, and the different fields were thereupon sold in conformity with the bounda- ries thus pointed out, the plaintiff would be estopped from claiming title to the land then purchased by the defendants south of the line thus pointed out by Blake."

Estoppels were not favored at common law, because it is said they tended to exclude the truth.

Every estoppel, says Lord COKE, 2 Inst. 352, f, because it concludeth a man to allege the truth, must be certain to every intent, and not be taken by argument or inference.

Estoppels *in pais*, seem in their common law origin, to have arisen only in the case of those solemn and peculiar acts, to which the law gave the power of creating a right, or passing an estate, and attached as much efficacy and im- portance as to matters appearing by deed or of record. 2 Smith's L. C. 561.

The doctrine of estoppels *in pais*, has however, by recent decisions, both in courts of law and equity, been subject to very material modifications, and its principles given a much broader application. Instead of being deemed *odious* as formerly, it is found conducive to honesty and fair dealing.

Admissions which have been acted upon by others, are conclusive against the party making them, in all cases be- tween him and the person whose conduct he has thus in- fluenced. It is of no importance whether they were made

in express language to the person himself, or implied from the open and general conduct of the party. For, in the latter case, the implied declaration may be considered as addressed to every one in particular, who may have occasion to act upon it. In such cases the party is estopped, on grounds of public policy and good faith, from repudiating his own representations. 1 Greenl. Ev. § 207.

In *Gregg* v. *Wells,* 10 Ad. & El. Lord DENMAN lays down the rule thus:—"A party, who negligently or culpably stands by, and allows another to contract on the faith and understanding of a fact which he can contradict, cannot afterwards dispute that fact, in an action against a person whom he has himself assisted in deceiving."

It is believed that the doctrine above cited, must be received with some modification and limitation.

In *Storrs* v. *Booker,* 6 Johns. 167, the rule of equity is thus stated; "where one having title, acquiesces knowingly and freely in the disposition of his property, for a valuable consideration, by a person pretending to title, and having color of title, he should be bound by that disposition of the property; and especially if he encouraged the parties to deal with each other in such sale and purchase. It is deemed an act of fraud for a party, cognizant all the time of his own right, to suffer another party to go on under that ignorance, and purchase the property, or expend money in making improvements upon it."

To justify the application of this principle, it is material that the party should be fully apprised of his rights, and should, by his conduct, or gross negligence, encourage or influence the purchase; for if he is wholly ignorant of his rights, or the purchaser knows them; or if his act, or negligence, or silence, do not mislead nor in any manner affect the transaction, there can be no just inference of actual or constructive fraud on his part. 1 Story's Eq. § 386.

To maintain this equitable estoppel, the party setting it up must be able to show, by averment and proof, that he has

been injured by the deception and fraudulent conduct of the other party.   *Morris* v. *Moore & al.* 11 Humph. 433.

In the *Welland Canal Co.* v. *Hathaway*, 8 Wend. 483, NELSON, J., thus states the rule; " as a general rule, a party will be concluded from denying his own acts or admissions which were expressly designed to influence the conduct of another, and did so influence, and when such denial will operate to the injury of the latter."

Before the party is concluded it must *appear*, 1st, that he has made an admission which is clearly inconsistent with the evidence he proposes to give, or the title or claim he proposes to set up; 2d, that the party has acted upon the admissions; 3d, that he will be injured by allowing the truth of the admissions to be disproved.   Per BRONSON, J., in *Dessell* v. *Odell*, 3 Hill, 216.   The same doctrine is affirmed in *Carpenter* v. *Stillwell*, 12 Barb. 128. ·

In *Whittaker* v. *Williams*, 20 Con. 98, STORRS, J., remarks, " the doctrine that one shall not be permitted to retract representations, in which is included conduct, by which he has induced another to adopt a particular course of action, supposes, and it is to be understood with the qualification, which is indeed a part of the principle itself, that the one by whom such representations were made, had a knowledge of his rights.   The principle which constitutes such representations an estoppel *in pais*, also requires that the action of the other party took place on the strength of them.

In *Copeland* v. *Copeland*, 28 Maine, 525, it was held to be well settled at law, as well as in equity, that when one by his words or conduct wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded, from averring against the latter, a different state of things as existing at the same time.

This doctrine was affirmed in *Stevens* v. *McNamara*, 36 Maine, 176.   A rule, substantially the same, prevails in Massachusetts.   *Parker* v. *Barker*, 2 Met. 423 ; *Brewer* v. *Boston & Worcester R. R. Co.* 5 Met. 478.   In the latter case,

WILDE, J., says, "a party is not estopped to prove a legal title to his estate, by any misrepresentation of its locality, made by mistake, without fraud or intentional deception, although another party may be induced thereby to purchase an adjoining lot, the title to which may prove defective; for he may require a warranty; and it would be most unjust that a party should forfeit his estate by mistake."

It will be perceived, that the rule by which a party is estopped *in pais*, is by no means uniform. There are certain elements in which all the cases concur; in others they are variant. Thus some require full knowledge of his rights, on the part of the party sought to be estopped, while others omit that element; some requiring that the party who seeks to enforce the estoppel, has been injured by the fraudulent acts or concealment of the other party; others do not. Probably no technical rule will be found applicable to all cases. Much must be left to the discretion of the Judge in applying the principle to the facts in particular cases.

When a party, with a full knowledge of his own rights, by his silence, intentionally permits others to be deceived and misled in relation to them, he will not afterwards be authorized to interpose his claim to the prejudice of the parties thus deceived and misled. Silence, under such circumstances, is assent. By that assent, good faith and fair dealing require that he should be bound.

But the silence of a party who is *ignorant of his rights*, ought not to operate to his prejudice. He, then, cannot be expected to speak. If, however, a party, when ignorant of his rights, induce others, equally ignorant, by his active interference, to pursue a particular course, he ought not, afterwards, to be permitted to allege facts inconsistent with, and injurious to, the rights acquired at his instigation and by his procurement. He is estopped in that case, not on the ground of fraud, but on the ground, that when one of the innocent persons must suffer, the loss should fall upon the one by whom it was occasioned.

In the case at bar, there is no evidence that the plaintiff

made any affirmative representations as to his title to the *locus in quo.* At most he was silent when the divisional line was pointed out. The rule laid down by the Court was, therefore, defective in this, that it did not require the jury to find that he had knowledge, at the time, where the true line was in fact located; and also, that it did not require the jury to find that the defendants were induced to purchase, and did purchase, in consequence of the silence or acts of the plaintiff. In view of the evidence before the jury, we think these considerations might have had an influence on their minds and we cannot say, would not have controlled their verdict.

For this cause there must be a new trial.

As to the other instructions given, or those withheld, no error is perceived. No question as to the form of the pleadings seems to have been raised at the trial. Such questions cannot, therefore, properly be considered here. If the brief statements of the defendants are defective, they may be amended before proceeding to trial, without prejudice to either party.

It becomes unnecessary to consider the motion.

*Exceptions sustained.*
*Verdict set aside and*
*New trial granted.*