**Brooks P. DOUGLASS and wife, Eva B. Douglass, Appellants,**

v.

**Melvin L. ROWLAND and wife, June D. Rowland, Appellees.**

Court of Appeals of Tennessee, Western Section.

April 19, 1976.

Certiorari Denied by Supreme Court Aug. 16, 1976.

Russell Rice, Jackson, for appellants.

James F. Butler, Jackson, for appellees.

NEARN, Judge.

On appeal, the controversy is between Douglass et ux. and Rowland et ux. who will hereafter be referred to in the singular.

Plaintiff Douglass and defendant Rowland are adjoining landowners. Douglass filed suit against Rowland seeking an injunction to halt the diversion of surface water from defendant's land to that of the plaintiff and for the removal of alleged encroachments upon plaintiff's land.

The Chancellor heard the case without intervention of a jury and enjoined the defendant from diverting surface waters upon plaintiff's land and held that plaintiff was estopped to claim that the common boundary between the parties was other than a concrete block retaining wall which constituted the physical barrier between the lands.

Only the plaintiff has appealed, and the appeal is from that portion of the decree which applies the doctrine of estoppel to plaintiff's right to dispute the concrete block retaining wall as being the common boundary line.

Six Assignments of Error are made to this Court, but they raise but two issues for our consideration. They are:

I

Did the Chancellor err in applying the doctrine of estoppel?

II

Did the Chancellor err in refusing to permit plaintiff to amend the complaint to seek monetary damages for the "unjust enrichment" received by defendant?

In 1948 the lands of both plaintiff and defendant were under the single ownership of Wilson. However, this single ownership in Wilson was acquired in two tracts by two deeds. The east-west line dividing the north tract from the south tract was described as running "N 86° 30′ W". Over the years the land has been divided by its various owners into smaller parcels. The lands of the plaintiff and the defendant were divided by a line which the deeds refer to as "N 86° 30′W" and running parallel to the old line running in an easterly direction between the Wilson tracts. It now appears that this directional call of "N 86° 30′ W" in the various deeds was erroneous and should have been N 82° 3′W; at least, the Chancellor so found. This error has created the disputed area along the common north-south boundary lines of the parties. The area is pie-shaped with the widest part being 36 feet at the rear or west line and narrowing to the undisputed common point in the east line of the parties.

Plaintiff acquired his land in 1965; defendant acquired his in 1968.

Everything went along smoothly until the Spring of 1972 when defendant decided to fill his land to road level so that commercial use could be made of it. Defendant began to place dirt fill on his land as well as on the pie-shaped parcel in dispute. On April 7, 1972, defendant received a letter from plaintiff's attorney complaining that the caterpillar tractors in use by defendant were damaging plaintiff's drive and parking area by running over it, and that some radio cable lines had been hit by the tractors. He also complained that unless defendant built a retaining wall, serious drainage problems would be inflicted on plaintiff. No boundary line complaint was made. Evidently the defendant satisfied plaintiff's complaint about the trespass on the driveway for the matter is never mentioned again.

In April of 1973, the plaintiff had changed lawyers but had not greatly changed his complaint. Defendant was still in the process of filling the land when plaintiff, through his lawyer by letter dated April 13, 1973, complained about the water being diverted on plaintiff's land and a possible encroachment at the toe of the dirt fill being made by defendant. To buttress the claim of encroachment and water diversion, a survey of the common boundary line was enclosed showing the toe of the dirt fill a few inches on plaintiff's land and an area of standing water on plaintiff's side of the

line. It was suggested that a concrete retaining wall be built within the lines as shown on the survey which was the "N 86° 30'W" boundary line. Defendant built the concrete retaining wall within the boundary as shown on the survey, surfaced the filled area with asphalt and built a drive-in type restaurant upon it. Some six months after the aforesaid line survey was made, with the aid of another surveyor, plaintiff discovered the error in the old deed call which had been carried forward in the line survey given to defendant. Upon this discovery plaintiff filed suit for the restoration of his 36 foot pie-shaped parcel and to enjoin the alleged water diversion.

■ The Chancellor held, and we believe correctly, that plaintiff was estopped to deny that the dividing line was "N 86° 30'W". In addition to the fact that plaintiff gave defendant a line survey indicating where the retaining wall should be constructed (which survey defendant followed), in 1968 when defendant purchased his land, in order to avoid any boundary dispute, plaintiff had the boundary line between plaintiff and defendant staked by his surveyor, with the stakes running exactly where the retaining wall now stands. On at least one other occasion plaintiff had the property restaked exactly where the retaining wall now stands.

Also, in 1972 there was a gathering of several landowners at or about the old "N 86° 30'W" line between the parties' lands, and defendant pointed out where he thought the line to be and where he planned his wall, that is along the stakes of the "N 86° 30'W" line. The plaintiff made no objection.

In *Duke v. Hopper* (1972 Tenn.App., W.S.) 486 S.W.2d 744 this Court observed as follows regarding estoppel:

"There are three kinds of estoppel; viz: (1) by record, (2) by deed, and (3) by matter *in pais*. *Denny v. Wilson County* (1955) 198 Tenn. 677, 281 S.W.2d 671. Estoppel *in pais* is an estoppel that does not arise from a record or written instrument, but arises from the conduct or silence of a party and is sometimes referred to as equitable estoppel. In the true sense, all matters of estoppel arise in equity, for the purpose of the existence of the doctrine is to prevent inconsistency and fraud resulting in an injustice. When a man has been misled by the untruth propounded by another, and acted to his detriment in reliance upon the misrepresentation, the misleading party will be estopped to show that the true facts are contrary to those he first propounded. In the words of Lord Coke, this is so 'because a man's owne act or acceptance stoppeth, or closeth up his mouth to alleage or plead the truth.' The English used may be dated, but the thoughts embodied therein have withstood the test of time and are the basis for all three kinds of estoppel."

In the case now before us we are concerned with a matter *in pais*.

Counsel for appellant argues that in order for the doctrine of estoppel to be applied, there must have been actual or constructive knowledge on the party to be estopped of the falsity of the statement made and relied upon by the other. Or stated another way, there must be a showing of an intent to deceive. Since there is no such showing in this case, the doctrine is unavailable. Strong reliance is placed upon the case of *Callahan v. Town of Middleton* (1954 W.S.) 41 Tenn.App. 21, 292 S.W.2d 501, for this proposition.

We are of the opinion counsel's reliance is misplaced. In the *Callahan* case, supra, the court was not concerned with any requirement of "guilty knowledge" on the part of the party to be estopped. The issue appears to have been one of reliance by the party seeking to apply the estoppel. In overruling appellant's contention that it had acquired an easement by prescription or estoppel, the Court gave the entire general statement of the general elements of estoppel as found in 19 Am.Jur., Estoppel. Sec. 42 pp. 642–643, which is as follows:

"The essential elements of an equitable estoppel as related to the party estopped are said to be (1) Conduct which amounts to a false representation or concealment

of material facts or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel they are (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially."

Generally, the Am.Jur. reference had application to the issue before the *Callahan* court, supra. However, the general statement contained in "(3)" relating to the party estopped is not altogether accurate.

In the case of *Fowler v. Tankersley* (1946 W.S.) 32 Tenn.App. 264, 222 S.W.2d 395, the court was faced with the same issue as we are now, that is, whether the orator must be aware of the falsity of the statement made, and be in possession of the true facts before the doctrine of estoppel will apply. Judge Anderson speaking for the Court stated that estoppel may be applied in cases of misrepresentations and deceitful actions, but then observed:

"It is sometimes said that actual fraud must be present before an estoppel can be set up against the owner of the legal title to land. But this is inaccurate. As used in this connection, the term 'fraud' is virtually synonymous with 'unconscientious' and 'inequitable'. It consists of the effort to repudiate conduct by which the other party has been induced to act. This is altogether different from saying that the conduct itself was accompanied by an actual intent to deceive. [Authorities cited.]

The principle of this rule is that underlying all equitable estoppel. This is, that when one of two innocent persons must suffer, he shall suffer who, by his own acts, occasioned the confidence and loss. Hence, if it could be assumed that the

sale of the land in the present case were void, it is no answer to say that at the time he made the representations the complainant was unaware of his rights in general and that fact in particular, and therefore was guilty of no actual fraud in the sense that his misrepresentations were made with an actual intent to deceive."

We believe that Judge Anderson properly pointed out the confusion sometimes created by the general statement and gave the more precise definition of the requirements. It should be further noted that in the later Am.Jur.2d, an entire new section has been added to account for the exceptions to the broad general statement contained in requirement "(3)". In the later Am.Jur. edition, 28 Am.Jur.2d, Estoppel and Waiver § 40 at page 646 in footnote (9), we find reference to the case of *Titus v. Morse*, 40 Me. 348, which we believe also contains the proper analysis of the requirement as follows:

"If a party, when ignorant of his rights, induces others, equally ignorant, by his active interference, to pursue a particular course, he ought not afterward to be permitted to allege facts inconsistent with, and injurious to, the rights acquired at his instigation and by his procurement. He is estopped in that case, not on the ground of fraud, but on the ground that when one of the innocent persons must suffer, the loss should fall upon the one by whom it was occasioned."

■ We hold that it is not necessary that the party against whom the estoppel is charged should have intended to deceive; it is sufficient if he intended that his conduct should induce another to act upon it.

From the facts of the case we conclude that the only reason in the world that plaintiff tendered the line survey to the defendant showing (a) the toe encroachment and (b) standing water was to have defendant (1) remove the toe encroachment and get himself and his proposed retaining wall south of the line as shown, and (2) stop dumping water on the land north of that

line. Defendant performed (1), and the Chancellor ordered (2). The clear purpose of that instrument was not only to induce but to require defendant to act according to it.

Counsel for appellant submits that the line survey showing the toe encroachment and standing water was not the act of the plaintiff but the erroneous act of the engineer in whom both parties had misplaced their trust. For the purposes of this dispute, the engineer was not the agent of both but was the agent of the plaintiff. The defendant had no say so in his hiring and had no knowledge of it until after the fact.

In short, we believe and hold that the factual elements necessary for the application of the doctrine of estoppel are present and any Assignment of Error directed to the first issue set forth at the beginning of this Opinion is overruled.

■ We hold the Chancellor erred in not permitting the plaintiff to amend his pleadings to seek monetary damages in the event injunctive relief would be denied. Rule 15 Tennessee Rules of Civil Procedure provides that amendments after responsive pleadings have been filed may be given "by leave of court; and leave shall be freely given when justice so requires". Also see *Branch v. Warren* (1975 Tenn.) 527 S.W.2d 89 and *Karash v. Pigott* (1975 Tenn.) 530 S.W.2d 775.

■ A court of equity in equity matters is not bound by the rigidity of law in forming its judgments. We believe that equity should afford plaintiff some relief from his own error when that relief will cause no injustice to defendant, who has benefited from it. We are of the opinion that an equitable conclusion to this matter requires that the cause be remanded for an amendment allowing plaintiff to seek monetary damages, and for an assessment of those damages based on the value of the pie-shaped wedge of land under the usual formula of a bargained-for price reached between a willing buyer and a willing seller, with no allowance for any decrease in value of plaintiff's land caused by the decrease in size.

Therefore, the Assignment of Error directed to the issue of the allowance of an amendment is sustained, and the cause is remanded to the Chancery Court of Madison County for further proceedings consistent with this Opinion.

Costs of appeal will be adjudged equally between the parties.

*So order.*

CARNEY, P. J., and MATHERNE, J., concur.