Jimmie Sue GIBSON, Plaintiff,

v.

INTERNATIONAL HARVESTER COMPANY, Defendant.

Civ. A. No. 81-2438.

United States District Court,
W.D. Tennessee, W.D.

Feb. 7, 1983.

Norman P. Hagemeyer, Memphis, Tenn., for plaintiff.

William F. Kirsch, Jr., Memphis, Tenn., for defendant.

## ORDER

HORTON, District Judge.

This is an action involving defendant International Harvester's non-contributory retirement plan in which the plaintiff, Jimmie Sue Gibson, seeks to be awarded survivor benefits under the plan. The defendant filed a counterclaim seeking return of funds it alleges were paid to plaintiff by mistake. Jurisdiction of this Court is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The case was tried, without a jury, on November 2, 1982.

The issue in this case is whether the plaintiff is entitled to survivor benefits despite her husband's death prior to the effective date specified by the retirement plan. Defendant contends the eligibility requirements had not been met, that the effective date had not arrived and the right to the benefits could not have vested in the plaintiff prior to her husband's death. The plaintiff presents several theories, including an estoppel argument, that would render the plan effective despite the plain lan-

guage of the plan itself. The Court is compelled to find in favor of the defendant in the original complaint but finds that the defendant is estopped from asserting the counter-claim.

The facts in this case are, for the most part, undisputed. The plaintiff, Mrs. Gibson, is the widow of George Gibson, who retired from International Harvester in 1970 after 20 years with the company. At the time of Mr. Gibson's death, on March 30, 1980, the couple had been married 39 years. For approximately 10 years prior to his death Mr. Gibson received benefits under the International Harvester Non-Contributory Retirement Plan.

Defendant's retirement plan had a "Spouse Option" under which retirees could elect to take a reduced monthly payment beginning at age 60 in return for the retiree's spouse receiving continued payments after the retiree's death. The plan provided that a retired employee must make the election in the month of his 60th birthday and that the election would become effective on the first day of the month following his 60th birthday. The plan included specific language making it clear that the election of the spouse option "shall be revoked automatically" upon the death of the retiree prior to the effective date. Since Mr. Gibson's 60th birthday was in March, 1980, the effective date of any election by Mr. Gibson was, under the plain language of the plan, April 1, 1980.

Following Mr. Gibson's retirement in 1970, he received a letter dated August 3, 1970, from the company notifying him that he had been favorably considered for retirement benefits and that he could elect the spouse option at a later date. The letter also stated:

If you elect this option, it will become effective on the first of the month following your 60th birthday and will result in a reduced benefit to you, in order to provide a continuation of pension benefits to your surviving spouse after your death.

On February 1, 1980, the defendant again wrote Mr. Gibson a letter outlining the

availability of the spouse option. The letter explained that if the option was elected it would result in a reduction in his monthly life income benefits to $190.75 and that if he predeceased his wife she would receive $104.91 per month. According to the letter, Mr. Gibson had until March 10 to elect the option, and if elected, "it would become effective April 1, 1980 provided you have been married for at least one year at that time."

The testimony of Mrs. Gibson indicated that her husband wasted little time in responding to the letter. He filled out the enclosed form marking the section indicating that he elected to exercise the survivor benefit option.[1] He had the form notarized, although he was not required to do so, and personally walked to the post office to mail the form back to the company, where it was marked received by the employee pension department on February 14, 1980. (Technically, under the plan, the election could not have been made until March, the month Mr. Gibson turned 60. However, there has been no contention that this factor alone would have any impact on Mrs. Gibson's eligibility.)

The next correspondence from the company to Mr. Gibson was dated February 18, 1980. That letter stated that the company had received the election form and was "pleased to extend the Spouse Option protection to you and your wife." However, the letter went on to state that the option "will become effective on April 1, 1980."

Medical records introduced at trial indicate that during this period of time Mr. Gibson, who had undergone triple by-pass surgery in 1972, was experiencing recurring angina pain. On March 25, one week before the effective date of the survivor benefits option, Mr. Gibson entered the hospital. After some tests were conducted, Mr. Gibson was discharged on March 29, following a diagnosis of arteriosclerotic heart disease. He died at home early in the afternoon the following day, March 30, less than 36 hours before the effective date of the spouse option.

Mrs. Gibson was notified by letter dated April 9, 1980, that she was entitled to receive the survivor's benefits and was subsequently sent three monthly checks[2] before the company realized that Mr. Gibson had died prior to the effective date of the spouse option and Mrs. Gibson was not entitled to the payments. After International Harvester cut off her survivor benefits, and following unsuccessful attempts to have them reinstated, Mrs. Gibson filed suit in this Court.

Plaintiff has argued that all of the traditional elements of a valid contract between Mr. Gibson and the company had been completed by February 18, 1980, when Mr. Gibson was notified by letter that his election of the spouse option had been received and accepted. It is plaintiff's contention that only the passage of time from February 18, 1980, to April 1, 1980, remained for the contract to be valid and that the mere passage of time is not a legally valid condition precedent to a conditional contract.

The Court must disagree with plaintiff's interpretation of the contract. It is clear from a reading of the plan and the correspondence that the contract was not conditioned on the mere passage of time as

1. This section reads as follows:

   Yes, I do elect the Optional Survivor Benefit (Spouse Option) with respect to my non-contributory benefits effective *4–1–80,* and I understand that my Life Income Benefit will be reduced commencing with such effective date and my surviving spouse will receive lifetime Non-Contributory pension benefits after my death in accordance with the Non-Contributory retirement program applicable to me.

   The date of 4–1–80 above was handwritten in a blank space on the form. Mrs. Gibson testified that the blank was not filled in by her or Mr.

Gibson. Although the date may have been added by company officials upon receipt by the defendant, the date is clearly in accordance with the February 1, 1980, letter and the terms of the plan itself.

2. The three checks sent to Mrs. Gibson totalled $619.33. These checks were in the amounts of $349.71, $134.81 and $134.81, including payments due to a pension increase retroactive to October 1, 1971, to which Mr. Gibson was properly due. The actual amount that is the subject of the counterclaim is $519.46.

plaintiff asserts. For the survivor benefit option to become effective on April 1, 1980, Mr. Gibson had to meet all of the eligibility requirements of the plan, both he and his wife had to still be living and, above all, he had to accept reduced lifetime benefits. The requirements were not met and Mrs. Gibson acquired no rights to the benefits.

■ Another argument made by plaintiff is that when the company stated in its correspondence that the option would be "effective" April 1, 1980, it was only referring to the date that the reduction in Mr. Gibson's benefits would take place. In other words, under such a construction, Mrs. Gibson was entitled to survivor benefits upon the death of her husband at any time after February 18, 1980, but Mr. Gibson would not have his lifetime benefits reduced, had he lived, until April 1, 1980. Such a construction is clearly contrary to the terms of the plan itself,[3] and, even assuming Mr. and Mrs. Gibson had not seen the plan, it is contrary to the correspondence from the company. Virtually every time there was a mention of the survivor benefits, it was linked to the reduction in Mr. Gibson's lifetime benefits. The correspondence repeatedly stated that the option "will become effective on April 1, 1980." The logical interpretation of those statements is that this effective date applied to the availability of survivor benefits to Mrs. Gibson as well as to the reduction in lifetime benefits to Mr. Gibson. Where an agreement is arguably susceptible of two different interpretations of which one is reasonable and the other is unreasonable, the reasonable interpretation must be adopted. *Trice v. Commercial Union Assurance Company,* 397 F.2d 889, 892 (6th Cir. 1968), *cert. denied* 393 U.S. 1018, 89 S.Ct. 623, 21 L.Ed.2d 563 (1969), citing *Turner v. Zager,* 50 Tenn.App. 674, 363 S.W.2d 512 (1962) and *E.O. Bailey & Co. v. Union Planters Title Guaranty Co.,* 33 Tenn.App. 439, 232 S.W.2d 309 (1949).

Finally, plaintiff has argued an estoppel theory to the Court. Plaintiff asserts that Mr. Gibson incurred high risks by admitting himself to the hospital and submitting to rigorous tests and that such stress and procedures led to his eventual death. Plaintiff further contends that Mr. Gibson relied upon the defendant's statements and actions indicating that the spouse option had been made available to him and took these risks in reliance on defendant's statements. According to plaintiff, such detrimental reliance should estop defendant from now asserting the ineffectiveness of the spouse option.

There are numerous problems with plaintiff's estoppel theory. A review of the purpose of equitable estoppel demonstrates the inapplicability of the theory in this case.

In the true sense, all matters of estoppel arise in equity, for the purpose of the existence of the doctrine is to prevent inconsistency and fraud resulting in an injustice. When a man has been misled by the untruth propounded by another, and acted to his detriment in reliance upon the misrepresentation, the misleading party will be estopped to show that the true facts are contrary to those he first propounded.

*Douglass v. Rowland,* 540 S.W.2d 252, 254 (Tenn.App.1976), *cert. denied,* quoting *Duke v. Hopper,* 486 S.W.2d 744, 748 (Tenn.App. 1972), *cert. denied.*

■ The elements of estoppel as related to the party claiming the estoppel are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially. *Douglass, supra* at 255.

■ In the case *sub judice* there is no clear evidence that Mr. Gibson thought the spouse option was effective prior to April 1, 1980. Assuming he did believe that the option was effective after February 18,

---

**3.** As noted previously, the retirement plan included a specific provision, Section 10(a)(3), stating that the election "shall be revoked automatically upon the death of the employee or his designated spouse, or both, prior to the effective date of the election."

rather than April 1, there is no clear proof that he took any action in reliance on that belief. Plaintiff asks the Court to infer that Mr. Gibson would not have entered the hospital and undergone the tests had he believed he needed to live until April 1 in order for his wife to receive survivor benefits. However, there is no proof in the record to substantiate this proposition. And even assuming that he did enter the hospital in reliance on defendant's statements, there is no medical evidence in the record to indicate that his hospital stay contributed to his death.

Further, the Court must point out that, even if the Court could somehow find sufficient detrimental reliance on the part of Mr. Gibson, it is impossible to establish one of the other essential ingredients of equitable estoppel—conduct on the part of defendant "which amounts to a false representation or concealment of material facts or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert." *Douglass,* supra at 254–55.

There is no indication there was any misstatement or misrepresentation of any kind in the correspondence received by Mr. Gibson. The letters stated that the spouse option would not become effective until April 1, 1980. The content of the correspondence to Mr. Gibson is in no way inconsistent with the defendant's assertion that the spouse option was not in effect on the date of Mr. Gibson's death.

Further, even if equitable estoppel were otherwise available, the effect would be to create a right in Mrs. Gibson which normally would not exist. Under Tennessee law, estoppel is available to protect a right, never to create one. *Franklin v. St. Paul Fire and Marine Insurance Company,* 534 S.W.2d 661, 666 (Tenn.App.1975), *cert. denied.*

The Court therefore must find in favor of the defendant and deny plaintiff's claim for reinstatement of the survivor benefits. The Court confesses considerable reluctance in doing so, because of the inescapable fact that, had Mr. Gibson lived for less than 36 hours longer, Mrs. Gibson would today be receiving the monthly benefits that her husband obviously intended her to have. Although the Court is not without sympathy for Mrs. Gibson, the law dictates this result. It is not within the power of this Court to correct every inequity, and the Court is called upon at times to perform distasteful duties. Unfortunately, this is such a time.

Although the Court is compelled to find against the plaintiff as to the original complaint, the Court finds that the doctrine of equitable estoppel does apply to prevent the defendant from asserting the counterclaim to recover the $519.46 mistakenly paid to Mrs. Gibson after her husband's death. While there was no intention on the part of the defendant to deceive Mrs. Gibson, it did, by letter dated April 19, 1980, inform her that she was entitled to the benefits. The Court finds that, in accepting the three checks subsequently awarded to her, the plaintiff detrimentally relied on defendant's misstatement that she was entitled to these checks. While the Court has found the estoppel theory was not appropriate to vest Mrs. Gibson with the right to future benefits, the theory may be invoked to protect her interest in the funds she has already received. Thus the counterclaim is dismissed. Judgment will be entered accordingly.