IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 20, 2013 Session

# CAPTAIN D'S REALTY, LLC
v.
# EP-D, LTD.

**Appeal from the Chancery Court of Shelby County**
**No. 12-0440-1    Walter L. Evans, Chancellor**

**No. W2012-02142-COA-R3-CV - April 30, 2013**

This appeal involves the interpretation of a commercial lease.  The lease gave the plaintiff tenant two successive options to extend the term of the lease, provided the tenant gave timely notice of its intent to exercise the renewal option. The tenant exercised the first renewal option, but did not give timely notice of intent to exercise the second option.  The lease also contained language giving the tenant a grace period to exercise the option if the lessor gave notice that the lessor had not received notice of renewal.  The lessor did not give the written notice to the tenant.  The tenant filed a lawsuit against the defendant lessor, seeking a declaratory judgment and damages for breach of contract. The plaintiff tenant asserted in the lawsuit that the tenant had the grace period to exercise the renewal option because the lease required the lessor to give written notice, and the lessor had failed to do so. Both parties filed dispositive motions based on their interpretations of the lease.  Construing the lease, the trial court held that the grace period was never triggered so the tenant's renewal option lapsed and granted a judgment in favor of the lessor.  The tenant appeals.  Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which, ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Leo Bearman, Jr., Charles K. Grant, and Elizabeth B. McCostlin, Memphis, Tennessee, for Plaintiff/Appellant, Captain D's Realty, LLC

Henry C. Shelton, III, Memphis, Tennessee, for Defendant/Appellee, EP-D, Ltd.

# OPINION

## FACTS AND PROCEEDINGS BELOW

For purposes of appeal, the pertinent facts are undisputed. In February 1987, lessor Defendant/Appellee EP-D, Ltd. ("EP-D") entered into a lease agreement with the predecessor of Plaintiff/Appellant Captain D's Realty, LLC, ("Captain D's") for the possession and use of commercial property in Memphis, Tennessee. The original lease was for a 20-year term. In 2000, Captain D's became the successor in interest to the original tenant of the property.

The lease included two successive five-year renewal options. The exercise of both options would extend the lease term for Captain D's until February 28, 2017. The paragraph in the lease containing the renewal options, Paragraph 4, is the operative paragraph that is at issue in this appeal. Paragraph 4 of the lease provides:

> Lessor agrees that Lessee shall have and is hereby granted two (2) successive options to extend the term of this Lease Agreement for terms of five (5) years on each such option . . . . Any such extension shall be by notice in writing given by Lessee not later than six (6) months prior to the expiration of the then term. . . . In the event that Lessee fails to notify Lessor of any renewal option hereunder prior to the date set forth above (the "notice date"), its option(s) to renew shall nevertheless remain in full force and effect for a period of thirty (30) days after receipt of written notice from Lessor subsequent to the notice date setting forth the expiration date of the Lease Agreement and advising Lessee that notice of renewal has not been received.

("Paragraph 4"). Thus, as to each five-year option to extend, the lease required Captain D's to give EP-D written notice at least six months prior to the expiration of the term.

In September 2003, well in advance of the lease's expiration, Captain D's and EP-D entered into an amendment to the lease agreement wherein Captain D's exercised its first option to extend the initial lease term for an additional five years; this extended the lease term to February 28, 2012. In November 2003, with EP-D's approval, Captain D's sublet the property to Serve Holdings, LLC, which in turn assigned its sublease to Sonfish, LLC ("Sonfish").

The six-month deadline for Captain D's to exercise the second five-year option to extend fell on August 28, 2011. Captain D's did not give EP-D notice of its intent to exercise the second option by that date.

On February 20, 2012, eight days before the lease term expired, Captain D's notified EP-D via a notice renewal letter that it intended to exercise its second option to renew the lease for another five-year term, to extend the lease term to February 28, 2017. When EP-D received the letter from Captain D's, EP-D refused to honor the attempt to exercise the renewal option because Captain D's did not give written notice of renewal at least six months before the expiration of the lease term. EP-D did not at any point send Captain D's "written notice . . . setting forth the expiration date of the Lease Agreement and advising [Captain D's] that notice of renewal ha[d] not been received," as described in Paragraph 4 of the lease.[1]

On March 12, 2012, Captain D's filed this lawsuit against EP-D in the Chancery Court for Shelby County, Tennessee. The lawsuit sought a declaratory judgment and also asserted a breach of contract claim; both claims for relief were based on the allegation that EP-D breached Paragraph 4 of the lease by refusing to recognize the valid exercise by Captain D's of its option to extend the lease term to February 2017. In its answer, EP-D denied that it breached Paragraph 4 and asserted that the complaint failed to state a claim upon which relief can be granted.

Captain D's filed a motion for partial summary judgment on its declaratory judgment claim. Based on the language of the lease and the undisputed fact that EP-D never gave Captain D's written notice that EP-D had not received a notice of renewal, Captain D's sought an adjudication that the term of the lease was extended until February 28, 2017.

EP-D in turn filed a motion for judgment on the pleadings. EP-D contended in the motion that Captain D's did not timely exercise its option to extend the term of the lease. EP-D described Paragraph 4 of the lease as follows: "If the landlord [EP-D] desires, the landlord can, by written notice to Captain D's, revive Captain D's right to renew." The written notice by the landlord, EP-D argued, was not required by the lease.

In August 2012, the trial court held a hearing on the motion for partial summary judgment filed by Captain D's, as well as the motion for judgment on the pleadings filed by EP-D. After the hearing, it entered an order granting EP-D's motion for judgment on the pleadings and denying the motion for partial summary judgment filed by Captain D's. Based on the undisputed facts, the trial court held that Captain D's gave notice that it sought to exercise its renewal option in February 2012, eight days before the lease expired, and thus Captain D's did not give EP-D written notice of its exercise of the option to extend the lease term prior to the August 28, 2011 deadline. It also held that EP-D never issued the written notice to Captain D's described in Paragraph 4 of the lease. "As a result," the trial court held, "the

---

[1] The record indicates that Sonfish did not renew its sublease with Captain D's, but instead entered into a new direct lease with EP-D, starting March 1, 2012.

rights of [Captain D's] to exercise the option to extend the Lease terminated six months prior to the expiration of the current term of the Lease," on August 28, 2011. The trial court concluded that EP-D "did not breach the Lease and, therefore, [Captain D's] [c]omplaint fails to state a cause of action against [EP-D]." On this basis, the trial court granted judgment in favor of EP-D, awarded EP-D reasonable attorney fees pursuant to the lease, and dismissed the complaint. Captain D's now appeals.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Captain D's frames the issue as: "In the event that Captain D's does not exercise its renewal option by the six months' notice date, does the renewal option nevertheless remain in full force and effect until 30 days after EP-D provides the written notice required by Paragraph 4 of the Lease?" In framing the issue, Captain D's contends that the answer is "yes." EP-D states the issue on appeal as: "Whether Paragraph 4 of the Lease requires Captain D's, the Lessee, to exercise its renewal option in a timely fashion?" Not surprisingly, EP-D answers its stated issue "yes."

The issue on appeal as framed by both parties involves only interpretation of the lease, a question of law reviewed *de novo* on appeal. ***Perkins v. Metro. Gov't of Nashville & Davidson Cnty.***, 380 S.W.3d 73, 80 (Tenn. 2012) (citing ***Allmand v. Pavletic***, 292 S.W.3d 618, 624-25 (Tenn. 2009)); ***Allstate Ins. Co. v. Tarrant***, 363 S.W.3d 508, 526-27 (Tenn. 2012). This must be done in the context of reviewing the trial court's grant of judgment on the pleadings and its denial of summary judgment, also reviewed *de novo* on appeal, with no presumption of correctness. ***Warren v. Estate of Kirk***, 954 S.W.2d 722, 723 (Tenn. 1997); ***Young v. Barrow***, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003).

### ANALYSIS

On appeal, we are required to construe Paragraph 4 of the lease between the parties, which provides:

> Lessor agrees that Lessee shall have and is hereby granted two (2) successive options to extend the term of this Lease Agreement for terms of five (5) years on each such option . . . . Any such extension shall be by notice in writing given by Lessee not later than six (6) months prior to the expiration of the then term. . . . *In the event that Lessee fails to notify Lessor of any renewal option hereunder prior to the date set forth above (the "notice date"), its option(s) to renew shall nevertheless remain in full force and effect for a period of thirty (30) days after receipt of written notice from Lessor subsequent to the notice*

-4-

> *date setting forth the expiration date of the Lease Agreement and advising Lessee that notice of renewal has not been received.*

(emphasis added).

Captain D's argues that, under Paragraph 4, its renewal option does not automatically expire if Captain D's fails to give six months' notice of its intent to exercise the option. Instead, Captain D's contends, Paragraph 4 imposes an affirmative duty on EP-D to provide Captain D's a written notice reminding Captain's D's of the expiration date for the renewal option and the lease expiration date, and notifying Captain D's that EP-D has not received the notice of renewal. Captain D's asserts that EP-D's duty under the lease to provide such notice was triggered on August 28, 2011, the six-month deadline for exercising the renewal option. In the absence of written notice from EP-D, Captain D's insists, Paragraph 4 of the lease "is explicit that the renewal option 'shall nevertheless remain in full force and effect' until 30 days after the Paragraph 4 notice is received."

Dissecting the language in Paragraph 4, Captain D's notes initially that the pivotal sentence starts with the phrase: "In the event that," and argues that this shows that the parties contemplated that the lessee might fail to timely notify the lessor of the exercise of its renewal option. In that event, Captain D's argues, Paragraph 4 states that the renewal option "*shall nevertheless* stay in effect" for 30 days after receipt of EP-D's written notice. Captain D's asserts that the words "shall" and "nevertheless" are both significant, and show that, despite the six-month notice period for exercise of the renewal option, the option "remain[s] in full force and effect." Captain D's asserts that the word "remain" is significant as well, because it means that the lease renewal option "continues unchanged." To construe the second half of Paragraph 4 otherwise, Captain D's contends, is to render the language superfluous, because if the parties had intended for the passing of the six month notification deadline to automatically extinguish the renewal option, they "would have simply omitted the second half of Paragraph 4." Thus, Captain D's maintains, Paragraph 4 should be construed to mean the following: "If the lessee fails to give six-months' notice, the lessor must notify the lessee in writing of the expiration date and 'advise' the lessee that notice has not been received. If the lessee fails to respond to the lessor within 30 days of this notice, then and only then is the option extinguished."

In response, EP-D contends the language in the second half of Paragraph 4 creates an option for EP-D to give Captain D's notice after the six-month deadline, that EP-D may choose to invoke or not. EP-D contends that the 30-day grace period was intended to be contingent on EP-D's decision, in its sole discretion, to give written notice to Captain D's. EP-D notes that no language in the lease agreement expressly places a duty on EP-D to provide Captain D's with the Paragraph 4 written notice that the renewal notification had not been received.

-5-

Indeed, EP-D states, the interpretation urged by Captain D's imposes no time limit on the lessee's right to exercise the renewal option; if Captain D's never gives notice of renewal and EP-D never provides the Paragraph 4 written notice to Captain D's, the lease would purportedly continue indefinitely. Under the correct interpretation of Paragraph 4, EP-D maintains, since EP-D chose not to send the Paragraph 4 written notice to Captain D's, the 30-day grace period was never triggered. EP-D characterizes the disputed language in Paragraph 4 as a framework "by which the parties might negotiate a continued lease relationship." Therefore, it argues, the trial court correctly interpreted the lease and did not err in dismissing the complaint.

Captain D's replies that its proposed interpretation does not lead to "indefinite" continuation of the lease; rather, Captain D's would simply remain in possession of the premises "as a holdover lessee until EP-D provides the Paragraph 4 notice or the renewal option is exercised." The construction urged by EP-D, Captain D's contends, is contrary to the purpose of a renewal option, which is to give the *lessee* the choice as to whether to remain on the premises beyond the original lease term. Moreover, Captain D's notes, EP-D's interpretation "would render the lessor notice language a nullity." The interpretation it advocates, Captain D's argues, "gives effect to each sentence in Paragraph 4" and is "commercially reasonable."

For purposes of appeal, the facts as set forth above are undisputed. We are left only to construe the operative language in Paragraph 4 of the lease, quoted above. As with any other contract, "[t]he legal effect of the terms of a lease are governed by the general rules of contract construction." *Dick Broad. Co. v. Oak Ridge FM, Inc.*, __ S.W.3d __ (Tenn. 2013); No. E2010-01685-SC-R11-CV, 2013 WL 175491, at *8; 2013 Tenn. LEXIS 13, at *26 (Tenn. Jan. 17, 2013) (citing *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 889 (Tenn. 2002); *Cali-Ken Petroleum Co. v. Slaven*, 754 S.W.2d 64, 65 (Tenn. Ct. App. 1988)). "A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties." *Allmand*, 292 S.W.3d at 630 (citing *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006)). To do so, we first look at "the plain and ordinary meaning of the written words that are 'contained within the four corners of the contract.'" *Dick Broad. Co.*, ____S.W.3d at ____; 2013 WL 175491, at *4; 2013 Tenn. LEXIS 13, at *10 (quoting *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011); *Kiser v. Wolfe,* 353 S.W.3d 741, 747 (Tenn. 2011)). If the contractual language is unambiguous, the literal meaning of the language controls. *Dick Broad. Co.*, __ S.W.3d at ___; 2013 WL 175491, at *4; 2013 Tenn. LEXIS 13, at *10-11 (citing *Allmand*, 292 S.W.3d at 630.) If the language in the contract "unambiguously mandates a particular result, we will not disturb that result merely because it may be harsh for one party or the other." *Wager v. Life Care Centers of America, Inc.*, No. E2006-01054-COA-R3-CV, 2007 WL 4224723, at *11; 2007 Tenn. App. LEXIS 743, at *27 (Tenn. Ct. App. Nov. 30, 2007) ("If there is no

ambiguity, the court must interpret the contract as written, rather than according to the unexpressed intention of one of the parties.") (citing ***Wright Med. Tech., Inc. v. Orthomatrix, Inc.***, No. W2000-02744-COA-R3-CV, 2001 WL 523992, at *3; 2001 Tenn. App. LEXIS 354 at *8 (Tenn. Ct. App. May 17, 2001); ***Sutton v. First Nat'l Bank of Crossville***, 620 S.W.2d 526, 530 (Tenn. Ct. App. 1981)).

Perhaps predictably, both parties contend that the contract language is unambiguous and mandates the result each advocates. We must respectfully disagree with both in that regard. Generally, whether contractual language is ambiguous, and therefore requires interpretation or construction, is a question of law to be decided by the court. ***Stonebridge Life Ins. Co. v. Horne***, No. W2012-00515-COA-R3-CV, 2012 WL 5870386, at *5 (Tenn. Ct. App. Nov. 21, 2012) (citing 16 *Williston on Contracts* § 49:17 (4th ed.)). While the court will not find ambiguity simply because the parties disagree as to the proper interpretation of the contract, ambiguity may be found where there "is doubt or uncertainty arising from the possibility of the same language being fairly understood in more ways than one. " ***Id.*** at *4 (quoting ***NSA DBA Benefit Plan, Inc. v. Conn. Gen. Life Ins. Co.***, 968 S.W.2d 791, 795 (Tenn. Ct. App. 1997)). In the case at bar, it may fairly be said that Paragraph 4 of the lease is "poorly drafted." ***Dunn v. Duncan***, No. M2004-02216-COA-R3-CV, 2006 WL 1233046, at *1 (Tenn. Ct. App. May 8, 2006). We are unable to discern the intent of the parties from the plain language of Paragraph 4, and the meaning of the pivotal language "is so uncertain that it can be reasonably understood in more than one way." ***Id.*** at *3 n.4 (citing ***Planters Gin Co.,*** 78 S.W.3d at 890. Thus, we must conclude that Paragraph 4 is ambiguous.

In ***Dunn***, the Court outlined the task before us when presented with an ambiguous contract provision:

> Written contracts do not always clearly convey the intentions of the contracting parties. When a contractual provision is ambiguous, it cannot be enforced according to its plain meaning, ***Johnson v. Johnson***, 37 S.W.3d [892], 896 [(Tenn. 2001)], and the courts must resort to the established rules of contract construction to ascertain the intent of the contracting parties. ***Planters Gin Co. v. Fed Compress & Warehouse Co***., 78 S.W.3d at 890; ***Kafozi v. Windward Cove, LLC***, 184 S.W.3d 693, 699 (Tenn. Ct. App. 2005).

***Dunn,*** 2006 WL 1233046*,* at *3 (footnote omitted). "The meaning of the contract becomes a question of fact only if an ambiguity remains after we have applied the appropriate rules of construction." ***Dick Broad. Co.***, 2013 WL 175491, at *4; 2013 Tenn. LEXIS 13, at *11

(citing *Planters Gin Co.*, 78 S.W.3d at 890) (quoting *Smith v. Seaboard Coast Line R.R.*, 639 F.2d 1235, 1239 (5th Cir. 1981)).[2]

Both parties in this case have done an excellent job of marshaling the rules of contract construction that support their positions and pointing out the shortcomings in the opposing party's proposed interpretation. Captain D's notes that courts are to construe contracts in a way that "gives a reasonable meaning to all parts of the contract," as opposed to an interpretation "that leaves portions of the contract meaningless." *Perceptics Corp. v. Societe Electronique et Systemes Trindel*, 907 F. Supp. 1139, 1143 (E.D. Tenn. 1992). It argues with some force that the interpretation advocated by Captain D's gives effect to each sentence in Paragraph 4, while the construction urged by EP-D renders the disputed language virtually meaningless, because the landlord does not need a contractual provision in order to offer the lessee an extension on the option to extend the lease term. *See Warren v. Metro. Gov't of Nashville and Davidson Cty, Tenn.*, 955 S.W.2d 618, 623 (Tenn. Ct. App.1997). Captain D's points out that we are to construe Paragraph 4 in light of the entire lease, and in contrast with Paragraph 4, other paragraphs in the lease contain express permissive language. *See Mark VII Transp. Co. v. Responsive Trucking, Inc.*, 339 S.W.3d 643, 647 (Tenn. Ct. App. 2009). It also contends that the interpretation advanced by Captain D's comports with the general purpose of renewal options, which are for the benefit of the lessee, not the lessor. *See Am. Oil Co. v. Rasar*, 308 S.W.2d 486, 490 (Tenn. 1957).

EP-D asserts that the interpretation advocated by Captain D's ignores the first sentence of Paragraph 4, which clearly required Captain D's to give notice of its intent to exercise the renewal option six months before the end of the lease term. *See Warren*, 955 S.W.2d at 622-23 (Tenn. Ct. App. 1997) ("Courts are to interpret and enforce the contract as written, according to its plain terms [and] are precluded from making new contracts for the parties by adding or deleting provisions."). EP-D argues that where a contract is ambiguous and susceptible to different interpretations, the court is obliged to adopt the more reasonable interpretation. *See Gibson v. International Harvester Co.,* 557 F. Supp. 1000, 1003 (W. D. Tenn. 1983). It insists that the construction urged by Captain D's is not reasonable, because it requires EP-D to "give a negative notice" to Captain D's.

We have carefully weighed both parties' arguments. We are persuaded that the construction advocated by Captain D's necessarily would require the Court to read into the lease a

---

[2]In some cases in which the operative contract language is ambiguous, the court must consider extrinsic evidence to ascertain the parties intent. *See e.g., Stonebridge Life Ins*., 2012 WL 5870386, at *7; *Dunn,* 2006 WL 1233046, at *4. In this case, for purposes of appeal, the parties have stipulated that the pertinent facts are undisputed, so we consider the disputed language in accordance with the principles of contract construction without resort to extrinsic evidence.

provision that is not there. "[C]ourts should tread cautiously when asked to recognize and enforce implied obligations that are not reflected in a written contract." *Dick Broad. Co.*, __ S.W.3d at __; 2013 WL 175491, at *15; 2013 Tenn. LEXIS 13, at *51-52 (Koch, J., concurring). Courts should not make contracts, but should only enforce the contract the parties themselves have written. *Dick Broad. Co.,* __ S.W.3d at __; 2013 WL 175491, at *15; 2013 Tenn. LEXIS 13, at *53 (Koch, J., concurring) (citing *Smithart v. John Hancock Mut. Life Ins. Co.,* 71 S.W.2d 1059, 1063 (Tenn. 1934)); *see also McKee v. Continental Ins. Co.*, 234 S.W.2d 830, 831 (Tenn. 1950); *Wright Med. Tech., Inc.,* 2001 WL 523992, at *3; 2001 Tenn. App. LEXIS 354 at *8. "The courts will not make a new contract for parties who have spoken for themselves, and will not relieve parties of their contractual obligations simply because these obligations later prove to be burdensome or unwise." *Vargo v. Lincoln Brass Works, Inc.*, 115 S.W.3d 487, 492 (Tenn. Ct. App. 2003) (citations omitted).

Tennessee courts have, on rare occasion, supplied an implied contractual provision. *See, e.g., Dick Broad. Co.,* __ S.W.3d at __; 2013 WL 175491, at *15; 2013 Tenn. LEXIS 13, at *51 (implied covenant of good faith and fair dealing in provision for assignment of agreement); *German v. Ford*, 300 S.W.3d 692, 706 (Tenn. Ct. App. 2009) ("implied or constructive condition requiring the obligee to render active cooperation, so as not to prevent the performance of the obligor"). Here, however, Captain D's asks this Court to supply an implied requirement that EP-D "remind" Captain D's of the deadline for exercising the renewal option and that EP-D has not yet received notice to renew from Captain D's. "The conduct of sophisticated parties engaged in commercial transactions is dictated by the 'impersonal laws of the marketplace' . . . . Parties engaged in a commercial transaction pursue their own self-interest and understand and expect that the parties with whom they are dealing are doing likewise." *Dick Broad. Co.,* __ S.W.3d at __; 2013 WL 175491, at *16; 2013 Tenn. LEXIS 13, at *55 (Koch, J. concurring) (footnotes and citations omitted). It would be unusual for one party to an arms-length commercial transaction to expect the other party to give them a "reminder" of a lapsed deadline. Under the circumstances of this case, implication of the contractual provision that Captain D's advocates is not warranted as either rooted in "the common law of Tennessee" or "necessary to meet the ends of justice." *Dick Broad. Co.,* __ S.W.3d at __; 2013 WL 175491, at *4; 2013 Tenn. LEXIS 13, at *12; *see also German*, 300 S.W.3d at 709. We decline to supply such an implied requirement to the parties' lease.

Accordingly, we find no error in the trial court's denial of Captain D's motion for partial summary judgment or its grant of a judgment on the pleadings to EP-D.[3]

---

[3]The award of attorney fees pursuant to the lease was not raised as a separate issue on appeal.

**CONCLUSION**

The decision of the trial court is affirmed and the cause is remanded for further proceedings consistent with this Opinion. Costs on appeal shall be assessed against Plaintiff/Appellant Captain D's Realty, LLC, and its surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE