**DAIRYMEN, INC.**

v.

**D. T. HARDIN et al.**

**Civ. A. No. 6936.**

United States District Court,
E. D. Tennessee, S. D.

Feb. 5, 1974.

Barrett, Brandt & Barrett, P.C., Nashville, Tenn., for plaintiff.

Charles J. Gearhiser Stophel, Caldwell & Heggie, Chattanooga, Tenn., for D. T. Hardin and Nathan Smith.

Goins, Gammon, Baker & Robinson, Chattanooga, Tenn., for Marvin Farrer and Jerry Sisk.

## MEMORANDUM

FRANK W. WILSON, Chief Judge.

The plaintiff, Dairymen, Inc., a cooperative milk marketing association, seeks by this lawsuit to enjoin the defendants, who are milk producers, from breaching their respective marketing contracts with the plaintiff. Jurisdiction is predicated upon diversity of citizenship and jurisdictional amount, pursuant to 28 U.S.C. § 1332. Specific performance is sought pursuant to the by-laws of the Association and pursuant to T.C.A. § 43–1835. Four milk producers were originally joined as parties defendant, but the lawsuit has been disposed of by an agreed order as to two of the defendants, Marvin Farrar & Son, d/b/a Nowega Farms, and Jerry Sisk. The lawsuit remains pending as to the defendants, D. T. Hardin and Nathan Smith, d/b/a Nathan Smith & Son, and is presently before the Court as to these defendants upon the plaintiff's motion for a preliminary injunction. The lawsuit was filed upon December 3, 1973, and an evidentiary hearing was held upon the motion for a preliminary injunction upon December 19, 1973. This Memorandum is entered upon the present record in the case.

The plaintiff has filed a verified complaint in which it alleges that the defendant Hardin and the defendant Smith each signed marketing agreements whereby they respectively agreed to deliver unto the plaintiff Association all of their milk and dairy products for marketing, all in accordance with the terms of their respective marketing agreements, copies of which agreements are made an exhibit to the verified complaint. The complaint further alleges that from and after August 28, 1973, or thereabouts, the defendants breached their marketing agreements by refusing to further deliver their milk to the plaintiff Association for marketing.

■ Upon its face T.C.A. § 43–1835 would appear to preclude the necessity, if not the possibility, of a hearing upon the plaintiff's application for a preliminary injunction and mandate ex parte relief. That statute reads in relevant part:

"Pending the adjudication of such an action (i. e., action on marketing contract) and upon filing a verified complaint showing the breach or threatened breach, and upon filing a sufficient bond, the association shall be entitled to a temporary restraining order and preliminary injunction against the member."

Such a literal reading of the statute, however, would appear to raise due process issues under Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). The Court will interpret the statute as according the plaintiff the remedy of specific performance but not modifying the requirements of notice, hearing or the usual equitable principles applicable to the granting of preliminary injunctive relief. (Some question was raised at the hearing as to whether the plaintiff, a Kentucky cooperative, would be entitled to rely upon the Tennessee Cooperative Marketing Association Statute (T.C.A. § 43–1801 et seq.). It is clear, however, that the statute itself affords to the Kentucky Cooperative "all of the remedies set forth in this chapter." T.C.A. § 43–1843).

With respect to the defendant Hardin, the evidence upon the hearing reflected that he signed a marketing agreement upon August 1, 1961, with the Chattanooga Area Milk Producers Association. By successive mergers and assignments, the agreement was assigned first to the Tennessee Valley Milk Producers Association and then to Dairymen, Inc. The agreement contained the following provision with regard to termination:

After this contract has been in full force and effect for one year, either party hereto may cancel it as of the next succeeding May 1st, or of any year thereafter, by notifying the other party in writing of his or its intention, such notice to be given during the month of March immediately prior to the effective date of cancellation. If neither of the parties cancels this agreement on or before May 1st of any year, as aforesaid, it is hereby mutually agreed that the fact shall constitute conclusive evidence that the parties hereto have renewed this contract for another year.

The defendant Hardin's dairy is located in Catoosa County, Georgia. Desiring to market his milk through another association based in Atlanta, Georgia, the defendant consulted with the resident manager of the plaintiff Association in Chattanooga, Tennessee, on or about August 1, 1973, regarding the termination of his agreement. Having checked the anniversary date on the contract, the resident manager advised Mr. Hardin that he could terminate his contract by giving 30 days' notice on that date. Mr. Hardin accordingly gave notice as follows:

"August 1st, 1973, TO: Dairymen, Inc.

This is to advise you that I do not wish to renew my contract on its expiration date in 1973.

Signed—D. T. Hardin"

Thereupon Mr. Hardin executed a contract with the Atlanta association and ceased delivery of his dairy products to

the plaintiff Association on or about August 31, 1973. On that same date the regional manager of the plaintiff Association advised Mr. Hardin that his attempted cancellation was not in accordance with the provisions of paragraph 9 of his contract and that his contract accordingly would not be subject to a notice of cancellation until March of 1974, to be effective as of May 1, 1974.

With reference to the defendant Smith, the evidence upon the hearing reflected that he signed a marketing agreement with the plaintiff effective as of September 14, 1972. That agreement contained the following provision with reference to termination:

> After this Agreement has been in full force and effect for one year, either party hereto may cancel it by giving written notice of such cancellation to the other party not more than forty-five (45) days nor less than thirty (30) days prior to the anniversary date of such contract. Such notice shall be deemed to be given when posted by certified mail, properly addressed to the other party at his or its last known address, but if neither of the parties hereto cancels this Agreement as aforesaid, it is hereby mutually agreed that that fact shall constitute conclusive evidence that the parties hereto have renewed this Agreement for another year .

Under date of August 3, 1973, the defendant Smith notified the plaintiff by letter as follows:

> "This notice is to inform you that effective September 14, 1973, which is the anniversary date of our contract, we are terminating our contract with Dairymen, Inc. This notice is in accordance with paragraph 10 of the said contract."

The plaintiff declined to accept this cancellation, advising Mr. Smith by letter dated August 10, 1973, as follows:

> "Paragraph 10 sets forth that the Agreement must be in full force for one year and then the contract can be cancelled on the next anniversary date. In other words, we are saying that your contract was accepted as of September 14, 1972, and cannot be cancelled until September 14, 1974."

After September 14, 1973, the defendant Smith ceased delivery of milk to the plaintiff Association and began marketing his milk through a North Alabama marketing association, his farm being located in Franklin County, Tennessee, near the Alabama state line.

It would appear clear that the notice of cancellation given by Mr. Hardin was not in accordance with the terms of his contract with the plaintiff. Mr. Hardin's contract, by its terms, was subject to cancellation only after notice of cancellation given in March of any contract year, to be effective on May 1 of any contract year. The provision regarding termination was not related to the anniversary date of the signing of the contract. Accordingly, notice of cancellation given upon August 1, 1973, to be effective upon August 31, 1973, was not in accordance with the provisions of the contract.

██ However, the remedy of specific performance is governed by the same equitable principles that control the administration of all other equitable actions. Ring v. Jehl, 57 Tenn.App. 557, 421 S.W.2d 375 (1967). From the facts presented in Mr. Hardin's case it would appear that the doctrine of equitable estoppel would be applicable. That doctrine provides that "a party who knows or should know the truth is absolutely precluded . . . from denying . . . any material fact which, by his own words . . . intentionally or through culpable negligence, he has induced another . . . who had a right to rely upon such words . . . to believe and act upon them thereby . . . changing his position in such a way that he would suffer injury if such denial . . . was allowed." 28 Am.Jur.2d "Estoppel and Waiver" § 27. Although there is no element of fraud in the present case (*See id.* § 44), the Court is none the less persuaded that estoppel would be appropriate on the present set

of facts. It is undisputed in the evidence that Mr. Hardin relied upon the representations of the plaintiff's managing agent to the effect that the contract was subject to cancellation upon its anniversary date, and that notice upon August 1, 1973, would be effective for this purpose. There is likewise no dispute but that Mr. Hardin, in reliance upon this representation, entered into a contract for delivery of his milk to an Atlanta marketing association, and that he would suffer substantial loss if he were compelled to breach or terminate this agreement. The plaintiff delayed for a period of one month the giving of any notice regarding its position that Mr. Hardin's cancellation was not in accordance with his contract. The Court is accordingly of the opinion that preliminary injunctive relief is not appropriate in Mr. Hardin's case. Under the proof in his case, a comparison of the relative hardships involved preponderates against granting preliminary injunctive relief unto the plaintiff. It does not appear that the plaintiff is confronted with any substantial diminution of its total supply of milk or with any number of milk producers attempting to breach their contracts. The potential damage to the plaintiff in denying preliminary injunctive relief would appear rather minimal when compared with the potential damage unto the defendant Hardin in compelling termination of his Atlanta delivery contract.

Turning to Mr. Smith's case, the single issue presented is one of contract interpretation. The evidence is undisputed that Mr. Smith gave written notice upon August 3, 1973, of his intention to terminate his contract with the plaintiff effective as of September 14, 1973, the first anniversary date of the contract. It is likewise undisputed that Mr. Smith's contract contained the following provision regarding termination:

"10. After this Agreement has been in full force and effect for one year, either party hereto may cancel it by giving written notice of such cancellation to the other party not more than forty-five (45) days nor less than thirty (30) days prior to the anniversary date of such contract . . ."

The plaintiff contends that the foregoing language should be interpreted as meaning that notice of contract termination may not be given until after the expiration of one year, thus rendering the contract non-terminable for a minimum of two years. The defendant upon the other hand contends that paragraph 10 should be interpreted as meaning that the contract was subject to cancellation at the end of one year, with notice of cancellation being subject to be given 30 to 45 days before any anniversary date, including the initial anniversary date. Reason may be advanced in support of each contention.

The plaintiff, with reason, contends that the phrase "after this Agreement has been in full force and effect for one year" modifies all that comes thereafter in the sentence, including the giving of notice of cancellation. The plaintiff would have the Court interpret paragraph 10 as though it read "By giving written notice of cancellation not more than forty-five (45) days nor less than thirty (30) days prior to any anniversary date *after* this Agreement has been in effect one year, either party may cancel it."

The defendant, with equal reason, contends that the phrase "after this Agreement has been in full force and effect for one year" modifies only the phrase "either party hereto may cancel," with the 30 to 45 day notice of cancellation requirement being modified only by the further phrase "prior to the anniversary date of such contract". The defendant would have the Court interpret paragraph 10 as though it read "By giving of notice of cancellation not more than forty-five (45) days nor less than thirty (30) days prior to any anniversary date, either party may cancel this Agreement after it has been in effect one year."

■■ Since paragraph 10 may with equal logic be given either interpretation, it is quite clearly ambiguous. It is well settled in Tennessee as elsewhere

that ambiguous and doubtful language in a contract will be construed most strongly against the party submitting the language and preparing the contract. Hanover Ins. Co. v. Haney, 221 Tenn. 148, 425 S.W.2d 590 (1968); Turner v. Zager, 50 Tenn.App. 674, 363 S.W.2d 512 (1962); 17 Am.Jur.2d "Contract" § 276. Since the contract was a printed form provided by the plaintiff, the ambiguity in paragraph 10 must be construed against the plaintiff's interpretation and in favor of the defendant's interpretation, with the result that the notice of cancellation given by the defendant Smith 30 days prior to the initial anniversary date of the contract was effective to cancel the agreement.

An order will enter in accordance with this Memorandum. Since no facts are at issue between the plaintiff and the defendant Smith, but only an issue of law is there presented, the case as between those parties will be treated as though before the Court upon a motion for summary judgment and an order of dismissal will enter. A temporary injunction will be denied as between the plaintiff and the defendant Hardin and that case will be set for trial upon all issues upon April 15, 1974.