**HOLSTON VALLEY HOSPITAL AND MEDICAL CENTER, INC.**

v.

**The ASHFORD GROUP LIMITED.**

No. CIV–2–85–171.

United States District Court,
E.D. Tennessee,
Northeastern Division.

April 16, 1986.

Frank A. Johnstone, Wilson, Worley, Gamble & Ward, Kingsport, Tenn., for plaintiff.

Michael J. Davenport, Saylor & Davenport, Johnson City, Tenn., for defendant.

## MEMORANDUM AND ORDER

HULL, Chief Judge.

This is a breach of contract action which came before the Court for trial on April 9, 1986. Plaintiff, Holston Valley Hospital and Medical Center, Inc. (Holston Valley), alleges that on April 24, 1984 it contracted defendant to assist in transferring computer software programs from plaintiff's Honeywell computer system to its new IBM system. The contract, plaintiff claims, set a completion date of July 15, 1984 and fixed the maximum contract price at $30,555.00, with provisions for additional charges of up to $10,000.00 should certain contingencies arise.

Plaintiff argues that defendant breached its contract because defendant did not complete performance by July 15, 1984 and because defendant ultimately repudiated the contract, abandoned performance, and destroyed the work which had been previously completed. As a result of defendant's breach, plaintiff asserts that it has received no benefit for the $27,700.00 it paid defendant before the breach and that it was forced to pay an additional $36,-086.63 to another contractor to complete the project.

Defendant, the Ashford Group Limited (Ashford), admits that it contracted with plaintiff to transfer computer programs from a Honeywell to an IBM computer system but asserts that contingencies provided for in the contract arose, causing delays and additional expenses. Furthermore, Ashford claims that plaintiff breached the contract when it refused to pay the invoices Ashford submitted in August, 1984 and failed to provide tapes that would be "readable" and "usable" on the IBM system. Ashford argues that these breaches on plaintiff's part justify its refusal to continue work on the project.

■ A central dispute in this case arises over which party had the responsibility of rendering the customized, Honeywell tapes "usable" on the IBM system. Plaintiff argues that it agreed to supply computer tapes which could be "read", but not necessarily understood, by the IBM computer. Plaintiff says that it was Ashford's task to adapt the tapes so that the IBM computer could understand and process the data contained on them. Defendant argues, on the other hand, that Holston Valley was to have made the old tapes "readable" and "usable" on the IBM equipment before defendant began the task of transferring the data from the Honeywell to the IBM. Ashford claims that Holston Valley's failure to provide "usable" tapes was a contract breach which justifies the additional expenses and time required on the project.

Inexplicably, the contract, which was prepared by Ashford, does not directly address the issue of which party was to convert the Honeywell tapes so that the IBM could interpret and process the data contained on them. On page two the contract provides the following ambiguous language:

> The Ashford Group Limited will provide technically qualified personnel to perform computer programming, analysis, documentation or other related duties to meet client's requirements as indicated by this agreement. The data processing technical services will be furnished by the Holston Valley Hospital and Medical Center and performed at Ashford's office on facilities furnished by IBM, and the Holston Valley Hospital and Medical Center. Holston Valley Hospital and Medical Center is responsible for furnishing MSA IBM system tapes to be used to accomplish this conversion.

Both parties admit that this contract language is ambiguous and does not clearly define the duties of either party.

Under Tennessee Law, ambiguous and doubtful language in a contract will be construed against the party who submitted the language and prepared the contract. *Dairymen, Inc. v. Hardin,* 369 F.Supp. 1102, 1106–1107 (E.D.Tenn.1974); *Hanover Insurance Co. v. Haney,* 221 Tenn. 148, 425 S.W.2d 590 (1968). Furthermore, where, as here, the contract is ambiguous and arguably susceptible to two different interpretations, one reasonable and the other unreasonable, the reasonable interpretation should be adopted. *Gibson v. International Harvester Co.,* 557 F.Supp. 1000 (W.D.Tenn.1983); *Oman Construction Co., v. Tennessee Central Railway Co.,* 212 Tenn. 556, 370 S.W.2d 563 (1963).

The Court finds that the most reasonable interpretation of this contract is that Holston Valley was to provide computer tapes which would be "readable" and adaptable to use on the IBM computer equipment but that Ashford's task was to convert the tapes so that the IBM could process and use the information. Nowhere does the contract state that Holston Valley must convert the Honeywell tapes so that the IBM computer could read, process, and interpret their information. In fact, as plaintiff's expert, John Munsen testified, adapting the customized Honeywell MSA tapes so that the IBM could process the data they contained was the "heart of the technical task" in the conversion project.

Since plaintiff's staff was admittedly inexperienced in using IBM equipment and since Ashford represented itself to be experts, the Court finds it unreasonable to believe that Holston Valley would hire experts to convert the computer programs but would reserve the most difficult conversion task for its own inexperienced staff. Had the parties intended otherwise, it would be reasonable to expect that Ashford, as the expert in computer conversion and the drafter of the contract, would have included explicit language to that effect in the contract.

■ Next, Ashford argues that the contingencies provided for in the contract all arose, necessitating additional time and expense. When Holston Valley refused to pay these expenses, Ashford claims it was justified in stopping work on the project. The contract provides the following at page seven:

In addition, Ashford has agreed that the amount of $30,555 will be the maximum to be charged for this project.

It is recognized that there are three areas of concern, *not under the control of Ashford,* and if a problem develops in any of the three, additional charges will be made if costs are incurred as follows:

1. If the release and installation of the MSA tapes at the Palo Alto Data Center requires corrective action, the maximum to be charged would be $2,000.

2. If the response time from the IBM system is very slow and requires additional equipment and time, the maximum to be charged would be $4,000.

3. If when the Ashford MSA specialist arrive in Kingsport to use the IBM 4381 and a determination is made that its development is unsatisfactory to complete the installation of the systems, a maximum charge of $4,000 may be made.

Defendant's representative, Kermit Pickett, testified that each of the contingency problems foreseen in the contract did occur and that he billed Holston Valley accordingly. On cross-examination, however, Mr. Pickett admitted that he had only invoiced $1,600.00 in expenses directly attributable to the contingencies provided for in the contract. James Going, assistant executive director of Holston Valley, testified that Ashford had already billed and Holston Valley had already paid $27,700.00 on the project when Ashford submitted an invoice for $6,300.00. This demand, Going testified, exceeded the contract price and was not attributed to any of the contract contingencies. Therefore, Holston Valley refused to pay and attempted to convince Ashford to complete the project for the agreed price. Ashford refused and stopped working on the project.

After careful consideration, the Court finds that the contract provided for a maximum price of $30,555.00, plus three possible additional charges should certain contingencies arise—one for a maximum of

$2,000.00 and two for a maximum of $4,000.00 each. While defendant claims that all contingencies arose, defendant presented only one invoice detailing $1,600.00 in expenses due to contingencies. Therefore, the Court finds, Holston Valley was justified in refusing to pay any demands in excess of $32,155.00 (i.e., the contract price plus $1,600.00); and Ashford breached the contract when it refused to complete the project for the contract price plus $1,600.00.

■ While Ashford may well have underestimated the costs of completing this project, this does not justify abandoning work after Holston Valley refused to pay more than the contract price. In fact, according to the undisputed testimony of Mr. Going and Mr. Pickett, Ashford representatives inspected Holston Valley's computer system in December 1983 and January 1984 and, as experts in converting computer programming, should have foreseen difficulties in completing the project and should have provided for such problems in the contract. Defendant's failure to appreciate the difficulty and expense in completing the conversion does not justify its unilateral demand for a modification of the contract price, especially since under Tennessee law, a modification of an existing agreement which imposes no new obligations on one of the parties is unenforceable for lack of consideration unless it also imposes new obligations on the other party. *Dunlop Tire & Rubber Corp. v. Service Merchandise Co., Inc.,* 667 S.W.2d 754 (Tenn.App.1983).

Therefore, the Court finds that Ashford breached its contract with Holston Valley when it abandoned the project and refused to continue working without payments in excess of the contract price. The Court further finds that Holston Valley's failure to supply "usable" tapes does not excuse Ashford's performance since Holston Valley was contractually bound to supply only "readable" tapes. Additionally, the Court finds that Holston Valley was justified in refusing to pay the final bills submitted by Ashford since these bills exceeded the total contract price and since Ashford had not invoiced the additional charges as contract contingencies.

■ Having determined that defendant Ashford did breach its contract with Holston Valley, the Court now turns to the issue of Holston Valley's damages. The purpose of assessing damages in a breach of contract action is to place the plaintiff, as nearly as possible, in the same position as it would have been in had the contract been performed. *Action Ads, Inc. v. William B. Tanner Co., Inc.,* 592 S.W.2d 572 (Tenn.App.1979).

The Court finds that the appropriate measure of damages in this case is the cost of completing the work ($36,086.63), less the amount saved due to defendant's breach. Since total cost of the Ashford contract would have been $32,161.00, and plaintiff paid Ashford only $27,700.00, plaintiff saved $4,461.00 due to defendant's breach. Accordingly, the Court finds that the appropriate amount of damages in this action is $31,625.63, (i.e., the cost of completion, less the amount saved by breach).

Plaintiff also asks the Court to award punitive damages. It alleges that defendant willfully and maliciously sabotaged the conversion work that defendant performed before it abandoned the project.

■ Punitive damages are rarely available in actions for breach of contract. *Johnson v. Woman's Hospital,* 527 S.W.2d 133, 141 (Tenn.App.1975). However, where the breach also constitutes a tort, punitive damages may be available. "The burden is upon plaintiff to show fraud, malice, gross negligence, oppression, or other misconduct which would entitle it to exemplary damages." *B.F. Myers & Son of Goodlettsville v. Evans,* 612 S.W.2d 912, 916 (Tenn. App.1980).

Here, however, the Court finds that plaintiff has failed to carry its burden of proof. While Mr. Going and members of plaintiff's computer staff testified that in their opinion defendant had deliberately "hidden" information on the tapes and had, in effect, sabotaged the conversion work, plaintiff's expert testified that he found no

such evidence. Therefore, plaintiff's claim for punitive damages is DENIED.

 Finally, the Court addresses two motions for a continuance which defendant raised at trial. In its first motion, defendant contends that it is entitled to a continuance since it was denied an opportunity to discover plaintiff's expert witness, Joe Munsen, prior to trial. Defendant argues that it had scheduled a discovery conference on April 8, 1986, one day prior to trial, but that Mr. Munsen was unable to attend. The Court notes that at the pretrial conference of November 6, 1985, plaintiff listed Mr. Munsen as a potential witness; that the Court set a trial date of April 9, 1986; and that the parties agreed on a discovery cut-off date of March 9, 1986. Accordingly, it appears to the Court that defendant was obliged to conduct discovery prior to March 9, 1986 and that its motion for a continuance at this late date is unwarranted. In the alternative, defendant moves the Court to exclude the testimony of plaintiff's expert. This motion is also DENIED for reasons stated below.

 Additionally, at the conclusion of all other testimony and without prior notice, defendant moved for an adjournment or continuance on grounds that defendant had overestimated the time required for trial and had failed to summon its own expert witness to court on the trial date. While the Court may grant a continuance or adjournment for good cause, the Court declines to do so where the sole cause is defendant's lack of preparation. Furthermore, since this action was based upon an ambiguous contract which the Court was required to interpret, the Court finds that its verdict would remain unaltered, even if plaintiff's expert had been excluded or even if defendant's expert had successfully refuted all testimony by plaintiff's expert.

Accordingly, defendant's motions for a continuance or an adjournment and its motion to exclude testimony of plaintiff's expert are hereby DENIED; and it is hereby ORDERED that judgment enter in favor of plaintiff and against defendant for $31,625.63.